**2025 IL 130618**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 130618)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
DAMARCO WATKINS-ROMAINE, Appellee.

*Opinion filed January 24, 2025.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, and Cunningham concurred in the judgment and opinion.

Justice Rochford specially concurred, with opinion, joined by Justice O'Brien.

## OPINION

¶ 1 This appeal involves article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff.

Jan. 1, 2023)[1] and Public Act 102-1104, § 70 (eff. Jan. 1, 2023). Specifically, this case involves the transition of defendants whose cases commenced prior to the effective date of the amended Code, from a pretrial system with monetary bail to the current system where monetary bail is abolished.

¶ 2    Defendant, Damarco Watkins-Romaine, was ordered released pending trial months before the effective date of the amended Code subject to a $350,000 bail. Watkins-Romaine never satisfied the amount set for monetary bail. After the amended Code became effective, Watkins-Romaine petitioned for release, contending that the financial condition of release was improper under the amended Code. The State responded with a petition to detain Watkins-Romaine under the amended Code.

¶ 3    The issue presented in this case is whether the State may file a petition to detain a defendant pretrial, in response to a defendant's petition to remove the condition of monetary bail, where the defendant had been ordered released but could not satisfy the previously set monetary bail. The Cook County circuit court heard the competing petitions and denied Watkins-Romaine's petition for release. The appellate court reversed, holding that "the legislature did not intend to allow the State to file a petition for pretrial detention under the circumstances of defendant's case and that the State's petition for detention was untimely." 2024 IL App (1st) 232479, ¶ 53.

¶ 4    We allowed the State's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Dec. 7, 2023). For the following reasons, we reverse the judgment of the appellate court.

¶ 5                              I. BACKGROUND

¶ 6    Watkins-Romaine was arrested when he turned himself in on August 31, 2023. Watkins-Romaine was charged with five counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2022)), one count of aggravated battery with

---

[1]Public Act 101-652 is commonly referred to as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or the Pretrial Fairness Act. "Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

a firearm (*id.* § 12-3.05(e)(1)), and one count of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)). The charges emerged from the State's allegation that, on November 23, 2022, Watkins-Romaine shot at the victim while both were driving their vehicles on Interstate 57 (I-57) in Chicago.

¶ 7                                    A. Circuit Court

¶ 8        On September 1, 2023, the circuit court held a hearing to determine whether Watkins-Romaine should be released from custody while he awaited trial. The State's position was that Watkins-Romaine was "mandatory no bail" pursuant to section 110-4(a) of the Code (725 ILCS 5/110-4(a) (West 2020) ("All persons shall be bailable before conviction, except the following offenses where the proof is evident or the presumption great that the defendant is guilty of the offense: *** offenses for which a sentence of life imprisonment may be imposed as a consequence of conviction ***.")).[2] The defense asked the circuit court to set a reasonable bond.

¶ 9        At the hearing, the State proffered the following. The victim was followed by a white SUV from a residence she was at to I-57. The victim began to merge onto I-57 and observed the white SUV behind her. The victim heard multiple gunshots and her window shatter. The victim looked over and saw the white SUV two lanes over, with no vehicles between her vehicle and the white SUV. The victim observed a Black male driving the white SUV. No other occupants were in the vehicle. The victim sustained five gunshot wounds.

¶ 10        Officers obtained the white SUV's license plate and learned it was registered to Watkins-Romaine's girlfriend. Approximately 2½ hours after the shooting, officers located the white SUV at Watkins-Romaine's girlfriend's residence. A search warrant was executed after the vehicle was towed. Officers recovered a live 9-millimeter round from the driver's side floorboard, which matched the brand and caliber of the rounds found at the crime scene. The white SUV tested positive for gunshot residue, and Watkins-Romaine's DNA was found inside the vehicle.

_____

[2]Although the legislature carried out a repeal of section 110-4 in Public Act 102-1104, § 75 (eff. Jan. 1, 2023), those amendments were held in abeyance while this court considered the amendments' constitutionality in *Rowe v. Raoul*, 2023 IL 129248, and the amendments ultimately took effect on September 18, 2023. See *id.* ¶ 52.

Watkins-Romaine was a Firearm Owner's Identification card holder. He purchased two boxes of ammunition on November 6, 2022, and the ammunition was the same brand and caliber as that found at the scene of the shooting and inside the white SUV.

¶ 11    Officers also obtained a warrant for Watkins-Romaine's phone number. The officers learned that Watkins-Romaine's phone had received calls around the time of the shooting and that cell site data indicated that his phone was in the vicinity of the shooting at the time of the shooting. Watkins-Romaine was arrested in January 2023 on an unrelated matter, and at the time of the arrest, he possessed a phone with the same number linked to the cell site data. Officers searched the phone and found a message from August 2022 stating that he had multiple firearms and would do harm on 99th Street every day.

¶ 12    The State asked the circuit court to order Watkins-Romaine held without bail. The defense argued that the State failed to establish that the proof was evident and the presumption great that Watkins-Romaine committed the charged offenses. The defense pointed to the lack of an identification, the weakness in the DNA evidence because Watkins-Romaine's DNA would be expected to show up in his girlfriend's car, especially because the two shared two minor children, and the police officers' failure to locate the weapon. The defense stated that Watkins-Romaine was a "working individual" and a "great father" who provided for his two minor children. Watkins-Romaine did not have a criminal background and was expected to start a job with the Chicago Transit Authority on the following Tuesday.

¶ 13    The circuit court found that there was "a lot of circumstantial evidence of the nexus between" Watkins-Romaine and the victim. The court found that the State's evidence was "not enough" to establish that the proof was evident and the presumption great that Watkins-Romaine committed the charged offenses. However, the court also found that the State had proffered "compelling circumstantial evidence," enough to warrant a "significant bond in this case." The court set bail at a "substantial" $350,000-D "to assure the safety of the public in light" of the State's proffer. Watkins-Romaine was never able to post bail.

¶ 14    On September 18, 2023, the amendments to the Code went into effect. See *Rowe v. Raoul*, 2023 IL 129248, ¶¶ 4, 52. Among other provisions, the Code

abolished monetary bail. See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023) (adding 725 ILCS 5/110-1.5) ("the requirement of posting monetary bail is abolished").

¶ 15    On December 7, 2023, Watkins-Romaine filed a petition for release under the Code. On December 13, 2023, at the first hearing after Watkins-Romaine filed his petition, the State filed a petition for pretrial detention. A hearing was held on the competing petitions the same day.

¶ 16    The State largely relied on the same evidence that it presented at the September 1, 2023, hearing. The State added that the victim was leaving her boyfriend's residence, in the block of 99th Street and South Lowe Avenue, when the white SUV began following her. Watkins-Romaine's cell phone messages indicated that he had a "prior beef" with the victim's boyfriend. One message referenced Thanksgiving and taking revenge, while another message stated that Watkins-Romaine was going to shoot up a house on 99th Street. With respect to the DNA evidence, the State clarified that Watkins-Romaine's DNA was found on the steering wheel, gear shifter, interior door handle, and five out of six cigarettes in the center console.

¶ 17    The circuit court denied Watkins-Romaine's petition to be released. The court found that the State had met its burden of establishing by clear and convincing evidence that the proof was evident and the presumption great that Watkins-Romaine committed the charged offenses.

¶ 18    Watkins-Romaine filed a notice of appeal on December 19, 2023. In the notice, Watkins-Romaine raised four issues: (1) the State failed to meet its burden of proof to show he committed the charged offenses, (2) the State failed to meet its burden of proof to show he poses a real and present threat to the safety of any person or the community, (3) the State failed to meet its burden of proof to show that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community, and (4) the circuit court abused its discretion in ordering he remain in detention because the order was contrary to the prior determination that he should be released. Watkins-Romaine did not challenge the timeliness of the State's petition to deny him pretrial release.

B. Appellate Court

¶ 20    The appellate court reversed the circuit court's judgment (2024 IL App (1st) 232479, ¶ 3), holding that "the legislature did not intend to allow the State to file a petition for pretrial detention under the circumstances of [Watkins-Romaine's] case and that the State's petition for detention was untimely" (*id.* ¶ 53). The appellate court primarily relied on the fact that Watkins-Romaine had already been ordered released pursuant to electronic monitoring and a large monetary bail. *Id.* ¶ 51 (explaining that "nothing in the amended Code indicates that the State should get a do-over"). The court remanded the case to the circuit court to "determine if there are conditions available that will reasonably ensure the appearance of defendant, the safety of any other person, and the likelihood of compliance by defendant with all the conditions of pretrial release." *Id.* ¶ 53 (citing 725 ILCS 5/110-5(e) (West 2022)).

¶ 21    This court allowed the State's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Dec. 7, 2023).

¶ 22                                      II. ANALYSIS

¶ 23    The Code sets forth the procedures for the circuit court to follow when an individual, such as Watkins-Romaine, who was ordered released subject to a significant bond that was never satisfied, seeks to have the conditions of bond reopened following the abolition of monetary bail. The central issue here is whether the State may file a petition to detain a defendant pretrial, in response to a defendant's petition to remove the condition of monetary bail, where the defendant had been ordered released but could not satisfy the previously set monetary bail. An additional issue that merits our consideration is whether, assuming the State may respond to a defendant's petition for release, the circuit court is permitted to deny a defendant's petition for release.

¶ 24                                    A. Standard of Review

¶ 25    The parties' arguments require us to interpret several provisions of the Code. "This court has frequently restated the basic principles of statutory interpretation."

*People v. Lane*, 2023 IL 128269, ¶ 11. "The most fundamental rule in statutory construction is to give effect to the legislative intent." *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). "The language of the statute is the best indication of the legislature's intent." *Id.* "If the language of a statute is clear, this court must give effect to its plain and ordinary meaning without resort to other aids of statutory construction." *Id.* We review issues of statutory interpretation *de novo*. *Doe v. Burke Wise Morrissey & Kaveny, LLC*, 2023 IL 129097, ¶ 20.

¶ 26                    B. Watkins-Romaine Forfeited the Current Claim

¶ 27        The threshold issue we must decide is whether Watkins-Romaine preserved the issue for review. To preserve the issue for review, Watkins-Romaine needed to object to the State's petition to deny pretrial release and include the issue in his notice of appeal. See *People v. Bush*, 2023 IL 128747, ¶ 70 (explaining that a defendant must make a contemporaneous objection to preserve an issue for review); Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023) ("The Notice of Appeal shall describe the relief requested and the grounds for the relief requested.").[3] Watkins-Romaine did not object to the State's petition to deny pretrial release. Watkins-Romaine also did not include this contention of error in his notice of appeal.

¶ 28        In light of this forfeiture, Watkins-Romaine asks this court to either analyze the issue under a plain error rubric or to excuse the forfeiture due to the newness of the amended Code and the caselaw interpreting it. We need not decide which suggested avenue to take because the result would be the same under either approach. We may review unpreserved issues for plain error. See *People v. Sebby*, 2017 IL 119445, ¶ 48; Ill. S. Ct. R. 615(a) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). There

---

[3]There has been a procedural change in our rules governing the preservation of an issue for review in a case adjudicating a petition to grant or deny pretrial release. Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) now provides: "As a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. *** Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived."). Because Watkins-Romaine filed his notice of appeal prior to April 15, 2024, he was not subject to this stricter preservation requirement.

are two approaches to plain error relief, with one focusing on the impact of the error on the proceedings and the other focusing on the seriousness of the error itself. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Under either approach, a defendant must establish first that a "clear or obvious" error occurred. *Bush*, 2023 IL 128747, ¶ 71. Therefore, we first determine whether Watkins-Romaine has established that the trial court erred in considering the State's petition to deny pretrial release. And, if the court did not err in considering the State's responsive petition, whether the court erred in denying Watkins-Romaine's petition for release when Watkins-Romaine had previously been granted pretrial release pursuant to a $350,000 bail.

¶ 29
## C. The Code as Amended by Public Acts 101-652 and 102-1104, Commonly Known as the Pretrial Fairness Act

¶ 30        Public Act 101-652 abolished monetary bail in Illinois. 725 ILCS 5/110-1.5 (West 2022) ("the requirement of posting monetary bail is abolished"). Now, every defendant is eligible for release before conviction, and each defendant is presumed to be entitled to release on personal recognizance. *Id.* § 110-2(a). The State has the burden to prove by clear and convincing evidence that any condition of release is necessary. *Id.* § 110-2(b). To warrant the denial of pretrial release of an individual charged with attempted first degree murder, such as Watkins-Romaine, the State has to prove by clear and convincing evidence that (1) "the proof is evident or the presumption great that the defendant has committed" the charged offense (*id.* § 110-6.1(e)(1)), (2) "the defendant poses a real and present threat to the safety of any person or persons or the community" (*id.* § 110-6.1(e)(2)), and (3) "no condition or combination of conditions *** can mitigate (i) the real and present threat to the safety of any person or persons or the community" (*id.* § 110-6.1(e)(3)). The Code also sets out timing requirements for the State to petition to detain a defendant pretrial. *Id.* § 110-6.1(c) ("A petition may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days *** after arrest and release of the defendant upon reasonable notice to defendant ***.").

¶ 31 The Code limits the State's ability to petition to detain a defendant who has previously been ordered released under the Code. Section 110-6(a) provides:

"When a defendant has previously been granted pretrial release under this Section for a felony or Class A misdemeanor, that pretrial release may be revoked only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release after a hearing on the court's own motion or upon the filing of a verified petition by the State." *Id.* § 110-6(a).

The State can also move for sanctions against a defendant who violates a term of his or her pretrial release. See *id.* § 110-6(e), (f) (defining sanctionable conduct and possible sanctions). Finally, section 110-6 provides that a "court may, at any time, after motion by either party or on its own motion, remove previously set conditions of pretrial release," but a "court may only add or increase conditions of pretrial release at a hearing under this Section." *Id.* § 110-6(g).

¶ 32 The Code also anticipates the situation presented in this case, namely, an individual who was granted pretrial release prior to the amended Code's effective date who remained in detention due to the inability to satisfy a condition of release. Section 110-7.5(b) of the Code provides: "On or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5." *Id.* § 110-7.5(b).

¶ 33 Section 110-5(e) provides:

"If a person remains in pretrial detention 48 hours after having been ordered released with pretrial conditions, the court shall hold a hearing to determine the reason for continued detention. If the reason for continued detention is due to the unavailability or the defendant's ineligibility for one or more pretrial conditions previously ordered by the court or directed by a pretrial services agency, the court shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release. The inability of the defendant to pay for a condition of release or any

other ineligibility for a condition of pretrial release shall not be used as a justification for the pretrial detention of that defendant." *Id.* § 110-5(e).

The parties and our appellate court agree on the controlling statutory provisions up to this point. The divide between the parties' positions and the numerous approaches taken in the appellate court emerges from the substantive makeup of a hearing under subsection (e).

¶ 34    The vast majority of appellate court decisions have held that the State is allowed to petition to detain a defendant in Watkins-Romaine's position if the defendant seeks to reopen the conditions of release under the amended Code. See, *e.g.*, *People v. Davidson*, 2023 IL App (2d) 230344, ¶ 18 ("That motion, in turn, triggered consideration of defendant's pretrial release conditions under the Code as amended by the Act, under which, on the State's petition, the court could deny defendant's release altogether." (Emphasis omitted.)); *People v. McDonald*, 2024 IL App (1st) 232414, ¶ 28 ("We believe that defendant's filing of the pretrial release petition opened the door to proceedings dictated by the amended statute, including the State's ability to file a pretrial detention petition in response."); *People v. Milner*, 2024 IL App (1st) 241284, ¶ 40 ("Because section 110-5(a) of the Code specifically contemplates that one possible result of such a hearing is a finding that no pretrial conditions will reasonably ensure the defendant's appearance in court, the safety of individuals or the community, or the defendant's compliance with all conditions of release, we hold that the State's petition for Mr. Milner's pretrial detention was not barred as untimely by section 110-6.1(c).").

¶ 35    On the other hand, some panels in the appellate court have held, as the appellate court did here, that the State is prohibited from petitioning to detain a defendant who was ordered released subject to a monetary bond prior to the enactment of the Pretrial Fairness Act. See, *e.g.*, 2024 IL App (1st) 232479, ¶ 51 ("But nothing in the amended Code indicates that the State should get a do-over now that defendant's monetary bond requirement no longer functions, as the trial court observed, as a *de facto* 'no bail' order."); *People v. Brown*, 2023 IL App (1st) 231890, ¶ 20 ("Allowing the State to file an untimely petition to detain a person who is already in jail is, in our opinion, not a rational reading of section 110-7.5.").

¶ 36                                    D. Hearing Under Subsection (e) of Section
                                                  110-5 of the Code

¶ 37            As discussed above, after the amended Code went into effect on September 18,
        2023, individuals in Watkins-Romaine's situation were "entitled to a hearing under
        subsection (e) of Section 110-5." 725 ILCS 5/110-7.5(b) (West 2022). Subsection
        (e) requires the circuit court, after finding that a defendant remains detained due to
        the inability to satisfy a condition of pretrial release, to "reopen the conditions of
        release hearing to determine what available pretrial conditions exist that will
        reasonably ensure the appearance of a defendant as required, the safety of any other
        person, and the likelihood of compliance by the defendant with all the conditions
        of pretrial release." *Id.* § 110-5(e).

¶ 38            Watkins-Romaine received the hearing he was entitled to on his petition for
        release from detention. The appellate court focused on the State's petition to detain
        as opposed to Watkins-Romaine's petition for release. The appellate court stated:
        "At issue in this appeal is the scope of the State's power to petition for the pretrial
        detention of defendants who were previously ordered released prior to the Code's
        amendment but remained in custody through no fault of their own." 2024 IL App
        (1st) 232479, ¶ 2. However, the circuit court's order adjudicated Watkins-
        Romaine's petition for release. In its oral ruling, the circuit court stated: "the motion
        to have the defendant released is going to be denied." And while the court's written
        judgment is on a form detention order, "an oral statement controls when the report
        of proceedings and common law record conflict." *Cook County Republican Party
        v. Illinois State Board of Elections*, 232 Ill. 2d 231, 237 (2009). Therefore, the
        circuit court's order was a resolution of Watkins-Romaine's petition for release,
        which was appropriate under sections 110-7.5(b) and 110-5(e) of the amended
        Code.

¶ 39            The circuit court's decision also resolved the State's petition to detain. The
        parties dispute whether the State was allowed to participate and, if allowed to
        participate, the extent of the State's participation. Watkins-Romaine contends that
        the State was limited to contesting what available conditions would allow for
        release while meeting the Code's requirements. The State contends that it was

                                                   - 11 -

allowed to "file a responsive petition seeking the continued pretrial detention" of Watkins-Romaine. We hold that the State was allowed to respond to Watkins-Romaine's petition for release. We further hold that the State could object to Watkins-Romaine's requested relief of release from detention pending trial.

¶ 40    To start, section 110-5(e) requires the court to "reopen the conditions of release hearing." 725 ILCS 5/110-5(e) (West 2022). To "reopen" means "to review (an otherwise final and nonappealable judgment) for the purpose of possibly granting or modifying relief." Black's Law Dictionary 1490 (10th ed. 2014). The hearing being "reopened" is the conditions hearing under section 110-5(a), which directs the trial court to a set of factors to consider in "determining which conditions of pretrial release, *if any*, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." (Emphasis added.) 725 ILCS 5/110-5(a) (West 2022); see *Milner*, 2024 IL App (1st) 241284, ¶ 37 ("The words 'if any' make clear that one possible result of such a hearing is that the court may conclude there are *no* appropriate conditions of release." (Emphasis in original.)).[4]

¶ 41    The initial circuit court order found that a "substantial bail," in the amount of $350,000, was necessary to "assure the safety of the public in light of these allegations." The circuit court further found that the circumstantial evidence was "compelling enough for a significant bond in this case." With the abolition of monetary bail, the circuit court was placed in a conundrum with Watkins-Romaine's petition for release: the condition necessary to ensure the safety of the community was no longer available, and no other condition existed that could ensure the safety of the community. Even if Watkins-Romaine's petition under section 110-5(e) was limited to this element of the current Code, as he argues, he could be denied pretrial release if the circuit court found that no conditions of

---

[4]We note that even the appellate court's remand order appears to allow for this potential result. See 2024 IL App (1st) 232479, ¶ 53 ("Upon remand, defendant should receive the hearing to which he is entitled *to determine if there are conditions available* that will reasonably ensure the appearance of defendant, the safety of any other person, and the likelihood of compliance by defendant with all the conditions of pretrial release." (Emphasis added.)).

pretrial release could ensure, *inter alia*, the safety of the community. See 725 ILCS 5/110-5(a), (e) (West 2022).

¶ 42    However, under the amended Code, a defendant can only be detained pretrial if the State proves by clear and convincing evidence the three elements in section 110-6.1(e). See *id.* § 110-2 ("Pretrial release may be denied only if a person is charged with an offense listed in Section 110-6.1 and after the court has held a hearing under Section 110-6.1 ***."); *id.* § 110-6.1(e) (setting out three elements the State must prove by clear and convincing evidence to warrant a defendant's pretrial detention). The most practical approach, and the only one not leading to absurd and unexpected results, is to allow the State in this limited circumstance to respond to a defendant's petition for release with a petition to detain under section 110-6.1 of the amended Code. See *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27 (explaining that "statutes must be construed to avoid absurd results").

¶ 43    As the appellate court has reasoned, Watkins-Romaine "reopened the matter by filing a pretrial release petition *** after his initial bond hearing was held, thus availing himself of the benefit of the amended statute, but at the same time, he also subjected himself to the procedures dictated by the amended statute." See *McDonald*, 2024 IL App (1st) 232414, ¶ 28; see also *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 22 ("This is analogous to when a change in the sentencing law occurs after a defendant has committed the offense—the defendant is given the opportunity to choose to be sentenced under that law that existed at the time of the offense or the newly enacted law."). To bridge the gap between a circuit court's denial of a defendant's petition for release under section 110-5(e) and the circuit court's ability to detain a defendant pretrial under the amended Code, we hold that the State may petition to detain a defendant pretrial when a defendant, who was previously ordered released on an unsatisfied monetary bail, seeks to reopen the conditions of release hearing after September 18, 2023.

¶ 44    A detention petition under these circumstances is supported by the amended Code. Section 110-7.5(a) provides: "This Section shall not limit the State's Attorney's ability to file a verified petition for detention under Section 110-6.1 or a petition for revocation or sanctions under Section 110-6." 725 ILCS 5/110-7.5(a) (West 2022). As the appellate court has noted, the use of "Section" as opposed to "subsection" indicates the legislature's intent for the provision to apply throughout

section 7.5 and not solely to subsection (a). See *People v. Whitmore*, 2023 IL App (1st) 231807, ¶¶ 7-8; see also *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999) ("It is well established that, by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended.").

¶ 45   Notably, section 110-7.5 only applies to those defendants whose pretrial detention or release has already been litigated. In other words, every defendant subject to section 110-7.5 will have had his or her "first appearance before a judge." See 725 ILCS 5/110-6.1(c)(1) (West 2022). Therefore, the legislature has sanctioned, or at least declined to prohibit, the State's filing of a "verified petition for detention under Section 110-6.1" for those already released on monetary bail (*id.* § 110-7.5(a)) and for those, like Watkins-Romaine, who are still detained due to the failure to satisfy a condition of release (*id.* § 110-7.5(b)).

¶ 46   Finally, we note that much of the appellate court's rationale, aside from its reading of the amended Code, was the notion that it "would be immensely unfair to permit the State to have a second bite at the detention apple." 2024 IL App (1st) 232479, ¶ 46. The appellate court's reasoning, while not expressly stated, appears to be premised on the preclusive doctrines of *res judicata* and collateral estoppel. See *Arvia v. Madigan*, 209 Ill. 2d 520, 534 (2004) ("*[R]es judicata* prevents a party from taking two bites out of the same apple."). "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction acts as an absolute bar to a subsequent action between the same parties or their privies involving the same claim, demand, or cause of action." *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 9. "Collateral estoppel is an equitable doctrine, the application of which precludes a party from relitigating an issue decided in a prior proceeding." *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387 (2000); *id.* at 388 (explaining that collateral estoppel "should not be applied unless it is clear that no unfairness will result to the party sought to be estopped").

¶ 47   It would not be equitable to preclude the State from meaningful participation in the proceedings on Watkins-Romaine's petition for release. To start, as we have noted, the Pretrial Fairness Act "dramatically changed the statutory framework for pretrial release of criminal defendants in Illinois." *Rowe*, 2023 IL 129248, ¶ 1. The

doctrine of *res judicata* does not apply when there has been a change in the law. See *Bernstein v. Department of Human Services*, 392 Ill. App. 3d 875, 895 (2009) ("A change in law occurring between two successive causes of action on the same subject matter renders *res judicata* inapplicable ***."); see also *Consiglio v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 121142, ¶ 44 ("A change in circumstances can create a new basis for a claim and thus obviate the danger of repetitive litigation.").

¶ 48    Also, it would be unfair to estop the State from litigating its detention petition in this case for three reasons. First, the circuit court order at issue here was the first to consider a petition to detain under section 110-6.1 of the Code, as the State's initial argument for detention was under section 110-4(a) of the prior Code. Second, at the initial detention hearing, while Watkins-Romaine won the battle (determination of the quality of the State's proffer), the State won the war (order in effect denying Watkins-Romaine pretrial release). As a result, the State "did not have a meaningful incentive to appeal" the circuit court's initial order. See *Herzog v. Lexington Township*, 167 Ill. 2d 288, 298 (1995). Finally, Watkins-Romaine, by filing his petition to reopen the conditions of release, necessarily sought to relitigate an issue previously determined in the State's favor—that a $350,000 bail was necessary to ensure the safety of the community. In this limited circumstance, with the amendments to the Code, it would be unfair to the State to allow Watkins-Romaine to reopen one aspect of the case while prohibiting the State from any meaningful participation.

¶ 49    In short, the procedures followed in the circuit court were fair and consistent with the amended Code. Watkins-Romaine petitioned to reopen the proceedings under section 110-5(e). The State was permitted to respond and request that Watkins-Romaine remain detained. The circuit court's order denying release, the substance of which is not before this court, was done in procedural compliance with the amended Code.

¶ 50                                   III. CONCLUSION

¶ 51    In sum, Watkins-Romaine has failed to establish error, let alone the "clear and obvious" error necessary for plain error relief. The circuit court did not commit error when it considered Watkins-Romaine's petition for release and the State's

responding petition for pretrial detention. Therefore, we reverse the appellate court's judgment. The appellate court did not consider Watkins-Romaine's remaining contentions of error. 2024 IL App (1st) 232479, ¶ 53 (declining to address Watkins-Romaine's argument that "the State failed to meet its burden of proof at the hearing on its petition for pretrial detention"). The parties have also not briefed or argued those remaining contentions before this court. Accordingly, we remand the cause to the appellate court to consider those contentions.

¶ 52    Appellate court judgment reversed.

¶ 53    Cause remanded.

¶ 54    JUSTICE ROCHFORD, specially concurring:

¶ 55    I agree with my colleagues that the appellate court's judgment must be reversed. However, I reach this conclusion for reasons other than those stated by the majority.

¶ 56    I agree with my colleagues that defendant forfeited review of this issue. *Supra* ¶ 27. Thus, he may obtain relief only if he can establish plain error. As the majority correctly notes, the first step in a plain error analysis is determining whether a " 'clear or obvious' " error occurred. *Supra* ¶ 28 (quoting *People v. Bush*, 2023 IL 128747, ¶ 71). Defendant has established that the trial court's consideration of the State's petition to detain was a clear or obvious error.

¶ 57    As this court explained in *Rowe v. Raoul*, 2023 IL 129248, ¶ 4, the Pretrial Fairness Act[5] was enacted as part of a comprehensive overhaul of many aspects of this state's criminal justice system. The Act "dramatically changed the statutory framework for pretrial release of criminal defendants in Illinois" (*id.* ¶ 1) by replacing a system of monetary bail with a "default rule that all persons charged with an offense shall be eligible for pretrial release on personal recognizance" (*id.* ¶ 5). When it enacted these new provisions, the legislature had to determine what relief should be granted to those defendants who had been ordered released with

_____

[5]For simplicity's sake, I will refer to the amended Code provisions as the "Pretrial Fairness Act." The Act has been referred to as the "Pretrial Fairness Act" and the "SAFE-T Act"; however, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

pretrial conditions under the old law—including the condition of depositing security—but remained in detention. The legislature enacted a clear, straightforward, statutory remedy that, unsurprisingly, would generally lead to these defendants being released. Nevertheless, the majority of appellate court decisions addressing defendants in this position have been unwilling to grant them the relief to which they are entitled and instead have declared that the State has a right to file new petitions to detain them.

¶ 58     The majority notes that the "vast majority" of appellate court decisions have held that the State is allowed to petition to detain a person in defendant's position. *Supra* ¶ 34. This point becomes much less significant when one acknowledges that the appellate court has been unable to agree on a rationale for why this is so. As the appellate court demonstrated below, the decisions allowing the State to do what it did here rely on several different rationales. There is disagreement over what gives the State the right to file the petition and what timing requirements apply. See 2024 IL App (1st) 232479, ¶¶ 35-48. And, after the appellate court filed its opinion in this case, yet another rationale emerged. In *People v. Milner*, 2024 IL App (1st) 241284, ¶ 37, the appellate court found a right for the State to file detention petitions against people in defendant's position by reading language from subsection (a) of section 110-5 of the Code (725 ILCS 5/110-5(a) (West 2022)) into subsection (e) (*id.* § 110-5(e)). It is remarkable that, in under a year, so many competing rationales have emerged in favor of the State's position. No appellate court panel has come up with an explanation sufficiently convincing to prevent future appellate court panels from looking for a better one. I submit that the reason the appellate court has struggled so hard to find support for the State's position is the simplest one: the appellate court is looking for something that is not there. A right to file a detention petition against a person in defendant's position simply does not exist in the statute. The majority's decision to the contrary finds no support in the Code's plain language and is a direct repudiation of the legislature's policy choice.

¶ 59     There was no statutory basis for the State to file the petition to detain that is the subject of this appeal. It was not filed within the time limits set forth in section 110-6.1(c) (*id.* § 110-6.1(c)). Nor did the State attempt to meet the requirements for filing a second or subsequent petition. See *id.* § 110-6.1(d)(2).

¶ 60    Moreover, there is no right to file a petition to detain in response to a defendant's request for a hearing under section 110-5(e) (*id.* § 110-5(e)). A helpful place to begin is an understanding of the nature of hearings under section 110-5(e). This subsection does not merely apply to people such as defendant who were detained under the old law. Rather, it applies to anyone who has been granted pretrial release with conditions and remains in custody after 48 hours. This subsection provides:

> "If a person remains in pretrial detention 48 hours after having been ordered released with pretrial conditions, the court shall hold a hearing to determine the reason for continued detention. If the reason for continued detention is due to the unavailability or the defendant's ineligibility for one or more pretrial conditions previously ordered by the court or directed by a pretrial services agency, the court shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release. The inability of the defendant to pay for a condition of release or any other ineligibility for a condition of pretrial release shall not be used as a justification for the pretrial detention of that defendant." *Id.*

¶ 61    The purpose of this subsection is obvious: to quickly and expeditiously provide a hearing for people who have been ordered released but remain in custody and to get them released, if possible. There is no other way to read this provision. The scope of the hearing is quite limited. The judge is to determine why the defendant remains in pretrial detention, keeping in mind that the inability to pay for a condition of release or ineligibility for a condition of release is not a justification for pretrial detention. The court is to determine if the reason for the detention is the "unavailability or the defendant's ineligibility for one or more pretrial conditions previously ordered by the court or directed by a pretrial services agency." *Id.* If that is the reason, then the court is to reopen the conditions of release hearing to determine what conditions will reasonably ensure the defendant's appearance, the safety of other persons, and compliance with the conditions of pretrial release. There is no provision in this subsection for the circuit court to reconsider a previous determination that the defendant is eligible for pretrial release.

¶ 62     A section 110-5(e) hearing is triggered quickly. A defendant is entitled to a hearing if he remains in detention 48 hours after being ordered released with conditions. There is nothing in this subsection to suggest that the legislature intended that a defendant seeking the hearing to which he is entitled means that the State could relitigate a petition to detain that it lost a mere three days previously. Again, the question at this point is *not* whether the defendant should be detained; it is why a defendant who has been ordered released has not been released. The majority asserts that the State is entitled to file a responsive pleading to a defendant's petition for release. While nothing in the plain language of the statute precludes a responsive pleading from the State, any such pleading would obviously have to be limited to things that are properly considered at a section 110-5(e) hearing. For instance, here, the State would have been entitled to argue that the court should leave in place all of the previously ordered conditions of release, except for cash bail. See *People v. Brown*, 2023 IL App (1st) 231890, ¶ 17.

¶ 63     With the legislature's abolition of monetary bail and the enactment of the Pretrial Fairness Act, the legislature had to determine what to do with people who had been ordered released under the previous law but remained in custody. The legislature enacted section 110-7.5(b) (725 ILCS 5/110-7.5(b) (West 2022)) to address this situation. This section provides, in relevant part:

> "On or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5." *Id.*

The legislature could have, but did not, say that the eligibility of such persons for pretrial release should be redetermined. The choice it made instead was to grant them a hearing under section 110-5(e). And a section 110-5(e) hearing is for people who have been ordered released with conditions and who were supposed to have been released. Whether this court agrees with that choice or wishes the legislature had made a different choice is immaterial. The job of the courts is to enforce the statute that the legislature enacted. See *Abrahamson v. Department of Professional Regulation*, 153 Ill. 2d 76, 91 (1992) (when statutory language is certain and unambiguous, " 'the only legitimate function of the courts is to enforce the law as enacted by the legislature' " (quoting *Certain Taxpayers v. Sheahen*, 45 Ill. 2d 75,

84 (1970))). This cause should be remanded for the section 110-5(e) hearing to which defendant is entitled.

¶ 64    In opposition to this conclusion, the State relies primarily on subsections (g) and (i) of section 110-6 of the Code (725 ILCS 5/110-6(g), (i) (West 2022)). Section 110-6(g) provides, in part, that

"[t]he court may, at any time, after motion by either party or on its own motion, remove previously set conditions of pretrial release, subject to the provisions in this subsection. The court may only add or increase conditions of pretrial release at a hearing under this Section." *Id.* § 110-6(g).

Section 110-6(i) provides that

"[n]othing in this Section shall be construed to limit the State's ability to file a verified petition seeking denial of pretrial release under subsection (a) of Section 110-6.1 or subdivision (d)(2) of Section 110-6.1" *Id.* § 110-6(i).

These subsections have nothing to do with this case. The State endorses the rationale from *People v. Jones*, 2023 IL App (4th) 230837, ¶ 17, that a petition for pretrial detention against a person in defendant's position "operates as a motion to increase the pretrial release conditions to the furthest extent" under section 110-6(g). There are three problems with this position. First, section 110-6 is not applicable to this case. Section 110-6 is applicable to defendants who have been released and committed another crime or violated an order of protection. Second, section 110-6(g) only allows the court to increase pretrial conditions at a section 110-6 hearing. The two types of hearings provided for in section 110-6 are revocation hearings and sanction hearings, and terms of pretrial release may be modified at these hearings. See 725 ILCS 5/110-6(a), (d), (e) (West 2022). The hearing defendant received in this case was neither of these things. Neither of the conditions necessary for the State to file a petition to revoke release was present here. See *id.* § 110-6(a). And the State may seek sanctions only when a defendant violates the terms of release. See *id.* § 110-6(d), (e). Second, even if section 110-6(g) had any relevance to this case, it is obviously not the case that seeking denial of release is a motion to increase pretrial release conditions to the fullest extent. A denial of release cannot be a condition of release. Section 110-6(i) also has nothing to do with this case. That subsection does not grant any new rights to file petitions

for pretrial detention. It merely clarifies that nothing in section 110-6 should be construed as limiting what rights the State otherwise has to file a petition under section 110-6.1. See *id.* § 110-6(i).

¶ 65　　　The majority does not endorse the State's rationale but rather offers several other justifications for reversing the appellate court. First, the majority criticizes the appellate court for focusing on the State's petition to detain as opposed to defendant's petition for release. *Supra* ¶ 35. The majority claims that, because the circuit court stated from the bench that " 'the motion to have the defendant released is going to be denied,' " defendant received the hearing to which he was entitled under section 110-5(e). *Supra* ¶ 38. This is not correct. As explained above, the hearing to which defendant was entitled under section 110-5(e) was one in which the court determines why the defendant has not been released and then, if necessary, reopens the conditions hearing. This is not the hearing defendant received. The hearing he received instead was one in which the State was allowed to relitigate whether he should be detained, and the judge reached the opposite conclusion than the previous judge did. A section 110-5(e) hearing is supposed to open with the court considering the reason for the defendant's continued detention. Here, the hearing began with the State litigating a petition to detain a defendant who was already detained. The hearing opened with the State trying to meet its burden of showing that the proof was evident or the presumption great that defendant had committed a detainable offense. The court determined that the State had met its burden and that defendant should be detained. After determining this, the court stated that the motion to have the defendant released was going to be denied. At this point, defendant's motion to be released was essentially moot, as the court had just found that the State had met its burden of showing that defendant should be detained. It was entirely appropriate for the appellate court to focus on the petition to detain because the improper petition tainted the entire proceeding and denied defendant the hearing to which he was entitled. Here, the circuit court never even considered what section 110-5(e) requires it to consider because it found that defendant should be detained. No appellate court decision has identified any language in section 110-5(e) that allows a court to consider whether the proof was evident or the presumption great that the defendant has committed a detainable offense, and the majority points to no such language either.

¶ 66     The written order that the circuit court entered was, unsurprisingly, captioned "Order After Pretrial Detention Hearing," and it specifically states that it is being entered "Upon hearing the State's Petition to Deny Pretrial Release." The majority cites the principle that an " 'oral statement controls when the report of proceedings and common law record conflict.' " *Supra* ¶ 38 (quoting *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 237 (2009)). But this principle has no application here because there is no conflict between the report of proceedings and the common-law record. The report of proceedings shows that the circuit court held a pretrial detention hearing, focusing on whether the proof was evident or the presumption great that defendant committed the offense. The circuit court did not conduct a section 110-5(e) hearing.

¶ 67     Next, the majority adopts the position first put forth by the court in *Milner*, 2024 IL App (1st) 241284, ¶ 37, that reads language from subsection (a) of section 110-5 into subsection (e). The reasoning goes like this. Subsection (e) provides that, if the reason for the defendant's continued detention is the unavailability of, or the defendant's ineligibility for, a condition of release previously ordered, the court is to " 'reopen the conditions of release hearing.' " *Supra* ¶ 40 (quoting 725 ILCS 5/110-5(e) (West 2022)). The hearing that is "reopened" is a conditions of release hearing, and these are provided for in subsection (a). *Supra* ¶ 40. And, at a subsection (a) hearing, the court is to consider certain factors in " 'determining which conditions of pretrial release, *if any*, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release.' " (Emphasis in original.) *Supra* ¶ 40 (quoting 725 ILCS 110-5(a) (West 2022)). The majority endorses *Milner*'s rationale that the words "if any" mean that the court may conclude that there are no appropriate conditions of release. *Supra* ¶ 40.

¶ 68     There are at least two problems with this position. First, section 110-5(e) does not merely state that the court should " 'reopen the conditions of release hearing.' " See *supra* ¶ 40 (quoting 725 ILCS 5/110-5(e) (West 2022)). The full phrase from section 110-5(e) is that the court should "reopen the conditions of release hearing to determine *what available pretrial conditions exist* that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial

- 22 -

release." (Emphasis added.) 725 ILCS 5/110-5(e) (West 2022). The legislature did not repeat the "which, if any" language from section 110-5(a) but instead used the word "what." It is a cardinal principle of statutory construction that, when the legislature uses certain language in one part of a statute and different language in another part, we assume different meanings were intended. *People v. Goossens*, 2015 IL 118347, ¶ 12. And, here, it makes sense that the legislature would intend a different meaning because section 110-5(e) hearings are limited to those defendants who have already been ordered released with conditions. In other words, a court has already determined that there *are* appropriate release conditions. This court may not simply ignore the language that the legislature used in the applicable subsection and instead apply language from a different subsection.

¶ 69 That is not to say, of course, that there are no circumstances under which a person could remain in detention after a section 110-5(e) hearing. For instance, consider a situation like the one that occurred in *Brown*, 2023 IL App (1st) 231890. There, the defendant was ordered released on electronic monitoring. *Id.* ¶ 3. He posted bond but was not released because an appropriate host site could not be found. *Id.* If the court were to reopen the conditions of release hearing and determine that nothing but electronic monitoring would "reasonably ensure the appearance of [the] defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release," it would be appropriate for the court to order that his detention continue until a host site could be found. See 725 ILCS 5/110-5(e) (West 2022). As the *Brown* court explained, the State could *not* file an untimely petition to detain the defendant, but the circuit court was "authorized to leave in place the conditions of pretrial release that were imposed *** aside from cash bail." *Brown*, 2023 IL App (1st) 231890, ¶ 17. Thus, here, the court was authorized to leave in place electronic monitoring and all of the other conditions of release ordered by Judge Ahmad, except for cash bail. But this is different than reconsidering whether the defendant is eligible for release in the first place.

¶ 70 Second, for a person such as defendant, "if any" is necessarily off the table. As the majority concedes (*supra* ¶¶ 30, 41), a prerequisite to detaining a defendant is a finding that "the proof is evident or the presumption great that the defendant has committed" the charged offense. See 725 ILCS 5/110-6.1(e)(1) (West 2022). Judge Ahmad found at the hearing on the State's initial detention petition that the State

had failed to meet that burden. Thus, when defendant requested his section 110-5(e) hearing, a finding that no conditions were available that would ensure compliance was off the table, as defendant was not subject to pretrial detention. Without the necessary finding that the proof was evident or the presumption great that defendant committed the offense, he was entitled to be released with conditions.[6] Instead, the majority holds that the circuit court may deny a defendant the hearing to which he is entitled by allowing the State to file a new petition for detention, even though the plain language of sections 110-7.5(b) and 110-5(e) does not allow the State to file such a petition. The majority's interpretation both ignores plain statutory language and thwarts obvious legislative intent.

¶ 71     This misreading of the statute then leads the majority to perceive a conflict in the statute that does not exist. The majority explains that, at the hearing on the State's initial petition to deny pretrial release, the circuit court imposed bail in the amount of $350,000. However, the elimination of cash bail placed the circuit court at the subsequent hearing "in a conundrum." See *supra* ¶ 41. The judge at the previous hearing believed that a substantial bond was a necessary condition of release, but this option was no longer available when defendant moved for a section 110-5(e) hearing. See *supra* ¶ 41. The majority holds that it was proper for the circuit court to determine that there were no conditions available that would ensure the safety of the public. *Supra* ¶ 41. However, defendant was not subject to detention in the first place because of the previous judge's finding that the State failed to establish that the proof was evident or the presumption great that defendant committed the charged offense. *Supra* ¶¶ 13, 41. Thus, the majority holds that the

---

[6]The majority notes that even the appellate court's remand order seemed to allow for the possibility of a finding that no conditions would ensure defendant's compliance. See *supra* ¶ 40 n.4. The appellate court stated in its remand order that defendant should "receive the hearing to which he is entitled to determine *if there are conditions available* that will reasonably ensure the appearance of defendant, the safety of any other person, and the likelihood of compliance by defendant with all the conditions of pretrial release." (Emphasis added.) 2024 IL App (1st) 232479, ¶ 53. Under the appellate court's rationale, however, "if" was not a proper consideration. The appellate court held that the circuit court should not have considered the State's petition for detention at defendant's hearing. Thus, defendant would go into a section 110-5(e) hearing as a person for whom the State had failed to show that the proof was evident or the presumption great that he committed the offense.

most practical approach is for this court to "bridge the gap" by simply declaring that, when a person in defendant's position files a petition for release, the State may respond with a petition to detain under section 110-6.1. *Supra* ¶ 43. This would give the circuit court the chance to detain the defendant by reaching a different conclusion on whether the State had met its burden to show that defendant should be detained. According to the majority, it is forced to grant the State this right to avoid "absurd and unexpected results." *Supra* ¶ 42. Presumably, in using the words "absurd" and "unexpected," the majority is invoking the canon of statutory construction that a court may ignore a statute's plain language when necessary to avoid absurd results or consequences that the legislature could not have intended. See *People v. Hanna*, 207 Ill. 2d 486, 498 (2003).

¶ 72     The problem the majority perceives, however, was entirely a result of the circuit court holding the wrong hearing. The circuit court was supposed to follow section 110-5(e). Instead, the court expressly considered only one thing at the hearing: whether the proof was evident or the presumption great that defendant committed the offense. When explaining his reason for detaining defendant, the circuit court judge stated from the bench: "Under the statute, this would be a mandatory detention based upon the facts if that burden of proof can be met." The circuit court concluded that the State did meet that burden and then stated that defendant would be detained. Section 110-5(e) does not permit the court to proceed this way. It simply does not allow the court to consider whether the proof was evident or the presumption great that defendant committed the charged offense. Again, a section 110-5(e) hearing is for defendants who have been ordered released with conditions. The circuit court was not placed in a conundrum by its inability to use monetary bail to detain defendant. Sections 110-7.5(b) and 110-5(e) gave the court clear instructions to follow and explained that the inability to pay for a condition of release or ineligibility for a condition of release may not be used to justify pretrial detention. Moreover, it is not clear that in this case the conditions of release hearing would even be reopened. Again, the conditions hearing is reopened only if the reason for the defendant's continued detention is the unavailability of, or defendant's ineligibility for, one or more pretrial release conditions previously imposed. 725 ILCS 5/110-5(e) (West 2022). Defendant asserted in his petition for release that he was unable to post the bond currently set. If it is determined that the reason for defendant's continued detention is solely his inability to make bail, that would not be grounds for reopening the conditions hearing. The majority never

mentions that, in addition to the $350,000 bond, Judge Ahmad had also imposed electronic monitoring and ordered defendant to (1) surrender his Firearm Owner's Identification card and any firearms, (2) not possess any firearms or other dangerous weapons, and (3) not have contact with the complaining witness or with any occurrence witnesses. If defendant would have made bail, he currently would be released on these terms. The circuit court did not find that any of these previously imposed conditions of release were unavailable.

¶ 73    Moreover, the canon of statutory construction about avoiding absurd or unexpected results has no application here, as defendant being released after a proper section 110-5(e) hearing would be neither unexpected nor absurd. When a state moves from a cash bail system to a no cash bail system, the intended and obvious result is that people who would have been detained under the previous law will no longer be detained. That is the whole point of eliminating cash bail. Circuit courts will no longer be able to find that the State failed to meet its burden of proof for a no bail order but then use a high bail to deny release. If the hearing before Judge Ahmad had taken place under the Pretrial Fairness Act, defendant would have been released. Once the circuit court found that the State had failed to establish that the proof was evident or the presumption great that defendant committed the charged offense, the circuit court would not have been able to detain him. And that is also what would have likely happened if defendant had been given a proper section 110-5(e) hearing. Not only would such a result not be unexpected, but we also have every reason to believe it is precisely what the legislature intended.

¶ 74    I ask my colleagues what would be *more expected* than for the legislature to enact procedures that would ensure that defendants who would not be eligible for detention under the Pretrial Fairness Act would be eligible for release once the act went into effect. Again, when the legislature eliminated cash bail, the legislature knew that there would be a class of defendants who were being held only because they could not make bail, and they enacted specific procedures to deal with these defendants. They could have, but did not, say that the State should be allowed to relitigate the question of their eligibility for release. Instead, they chose to grant them a section 110-5(e) hearing, a procedure that would almost certainly lead to release. Again, *what could be more expected*? Surely, the majority does not mean to suggest that, if the original circuit court would not have had monetary bail as an option, it would have reached a different conclusion on the question of whether the

proof was evident or the presumption great that defendant committed the offense. That is not a presumption we should ever make about a judge, and the legislature obviously chose to believe that, when circuit courts found defendants eligible for release, they were sincere in their findings. Accordingly, it makes perfect sense that the remedy the legislature would grant these defendants is a section 110-5(e) hearing.

¶ 75     And, just as such a result would not be unexpected, it would likewise not be absurd. Again, what is absurd about a person who would not be eligible for detention under the Pretrial Fairness Act obtaining his release under the act? With the elimination of cash bail, courts may no longer use high bail amounts to detain defendants who are not eligible for detention. What the majority calls absurd is the very point and purpose of the Pretrial Fairness Act. Because applying the plain language of the statute does not lead to absurd and unexpected results, this court must enforce the statute as written. As the appellate court correctly stated when addressing this issue in *People v. Watson*, 2024 IL App (1st) 240207-U, ¶ 18, "[r]eviewing courts should not complicate the Code's simple dictates to fix problems of their own making." This court might believe that the legislature should have made a different choice and provided that, for defendants who were being detained because they could not make bail, the question of their eligibility for release should be redetermined. The legislature made a different choice, however, and that choice is entirely consistent with the purpose and policy of the Pretrial Fairness Act. This court must therefore apply the statute as written and may not rewrite it in accord with its own policy preferences. See *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 558 (2009) (the judiciary does not rewrite statutes "to make them consistent with the court's idea of orderliness and public policy"); *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005) (" 'Under the guise of construction, a court may not supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute.' " (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309-10 (2001))); *Ferguson v. Skrupa*, 372 U.S. 726, 730 (1963) ("[C]ourts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws."); *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423 (1952) (the courts do not "sit as a super-legislature to weigh the wisdom of legislation").

¶ 76    Indeed, what *would* be both unexpected and absurd would be for the legislature to overhaul the Code's pretrial release provisions by eliminating monetary bail and replacing it with a system whereby everyone is presumptively entitled to release on personal recognizance but then allow courts to find new ways to detain people who are being held because they could not afford bail. Why would the legislature enact provisions that thwart its own intent? As the circuit court in this case conceded, one of the main purposes of the Pretrial Fairness Act was to eliminate the practice of finding someone eligible for release with conditions but then imposing a bond amount that he or she would never be able to pay. Why would we presume that the legislature intended to replace this with a new practice whereby courts could deny release to these very same defendants by allowing courts to reconsider their eligibility for release when there has been no change in their circumstances?

¶ 77    The majority states that its interpretation is supported by the second sentence of section 110-7.5(a), which states that "[t]his Section shall not limit the State's Attorney's ability to file a verified petition for detention under Section 110-6.1 or a petition for revocation or sanctions under Section 110-6." 725 ILCS 5/110-7.5(a) (West 2022). The majority notes that this sentence uses the term " 'Section' " instead of " 'subsection.' " *Supra* ¶ 44. The majority reads this sentence as a broad grant of authority for the State to file a petition for detention, revocation, or sanctions whenever any provision of section 110-7.5 is in play, including subsection (b). *Supra* ¶ 45. The majority notes that section 110-7.5 applies only to defendants who have already had their pretrial detention or release litigated and thus will have already had their " 'first appearance before a judge.' " *Supra* ¶ 45. Thus, by referencing a petition for detention in section 110-7.5(a), the legislature must have intended to allow new petitions for detention against any defendants covered by any provision of section 110-7.5. *Supra* ¶ 45. This reasoning does not withstand scrutiny.

¶ 78    There is a difference between statutory language that grants a right and statutory language that does not limit a right otherwise granted. The second sentence of section 110-7.5(a) does not grant the State a right to file petitions for detention, revocation, or sanctions whenever any provision of section 110-7.5 is in play. Rather, it is merely cautionary language that nothing in section 110-7.5 should be read as limiting the rights the State otherwise has under sections 110-6 and 110-6.1. This cautionary language is necessary because of sentences in section 110-7.5

such as "[o]n or after January 1, 2023, any person having been previously released pretrial on the condition of the deposit of security *shall be allowed to remain on pretrial release* under the terms of their original bail bond." (Emphasis added.) 725 ILCS 5/110-7.5(a) (West 2022). The legislature is merely clarifying that saying things such as "shall be allowed to remain on pretrial release" does not mean that the State does not have the rights with respect to such defendants that it would otherwise have under sections 110-6 and 110-6.1. But the legislature did *not* grant the State the right to file detention petitions against people in defendant's position. As the appellate court stated, "[a] petition for detention would be redundant, because the defendant is already in custody, and misplaced, because the trial court already determined the defendant was eligible to be released." 2024 IL App (1st) 232479, ¶ 50. The majority claims that, as section 110-7.5 applies only to defendants who have already had a detention hearing, the second sentence of section 110-7.5(a) must be understood as granting a right to the State to file a new petition to detain in any hearing under section 110-7.5. But this is not correct because section 110-6.1 specifically allows the State to file a second or subsequent petition for detention based on facts not known or obtainable at the time of the filing of the original petition. 725 ILCS 5/110-6.1(d)(2) (West 2022). If the State wishes to proceed under this subsection, it must present a verified application setting forth the facts that were previously unknown or unobtainable when it filed the initial petition. *Id.* Additionally, if a defendant commits an offense while on release, the State may file a petition for detention in the new case. See *People v. Acosta*, 2024 IL App (2d) 230475, ¶ 28. Thus, there are circumstances under which the State could file a detention petition against someone who has already had a detention hearing and been released.

¶ 79    Finally, the majority ends its analysis by responding to an argument that the appellate court never made. The majority notes that the appellate court stated that it would be " 'immensely unfair to permit the State to have a second bite at the detention apple.' " *Supra* ¶ 46 (quoting 2024 IL App (1st) 232479, ¶ 46). The majority claims that, by stating this, the appellate court was invoking the principles of collateral estoppel and *res judicata*. *Supra* ¶ 46. The majority then spends several paragraphs explaining why these doctrines do not apply. See *supra* ¶¶ 47-49. The appellate court, however, never invoked collateral estoppel or *res judicata*, and the defendant has made no such argument in this court. The full passage from which the majority took this quote is the following:

> "The legislature accounted for those who were ordered released under the prior bail system but could not be released due to some circumstance beyond their control. 725 ILCS 5/110-7.5(b), 110-5 (West 2022). It would be immensely unfair to permit the State to have a second bite at the detention apple simply because defendant exercised his statutory right to try to find a way to fulfill the trial court's preexisting order that he could be released." 2024 IL App (1st) 232479, ¶ 46.

This passage came at the end of a lengthy discussion where the court explained that the plain language of the Code does not allow for detention petitions against people in defendant's position and that appellate court decisions that have found such a right have read additional language into the statute. All that the court was saying in the above paragraph was that a defendant seeking the hearing to which he is statutorily entitled should not lead the courts to punish the defendant by granting the State a right that the legislature chose not to. This has nothing to do with collateral estoppel or *res judicata*.

¶ 80 For all of the above reasons, I believe that defendant has demonstrated that the circuit court's consideration of the State's petition to detain was a clear or obvious error. The State argues that the error could not have been clear or obvious, given the split in appellate court authority. I disagree. The language in sections 110-7.5(b) and 110-5(e) is clear, straightforward, and easy to apply. As the *Watson* court correctly stated, this is a simple question with a simple answer. *Watson*, 2024 IL App (1st) 240207-U, ¶ 2. It has been complicated only by reviewing courts attempting to fix problems of their own making. *Id.* ¶ 18. In *People v. Presley*, 2023 IL App (5th) 230970, ¶ 33, the court found this error to be clear or obvious because "the plain language of the statute clearly delineates when the State is authorized to file a petition for detention." The appellate court correctly demonstrated below that the interpretations in favor of the State all require courts to read language into the Pretrial Fairness Act or to apply language from inapplicable subsections. See 2024 IL App (1st) 232479, ¶¶ 35-48. Indeed, the majority concedes that its interpretation is not based on the Pretrial Fairness Act's plain language. Rather, the majority states that it is allowing the State to file the petition to detain as a "practical approach" (*supra* ¶ 42) to bridge what it perceives to be a "gap" (*supra* ¶ 43) in the legislature's statutory scheme. Because the Pretrial Fairness Act's plain language

admits of only one conclusion, I would hold that defendant has demonstrated a clear or obvious error.

¶ 81    If a court determines that defendant has established that a clear or obvious error has occurred, the next step of the plain error analysis turns on which prong of the plain error rule the defendant has invoked. *People v. Moon*, 2022 IL 125959, ¶ 23. Here, defendant has invoked the second prong, and the appellate court concluded that defendant could obtain relief under that prong. See 2024 IL App (1st) 232479, ¶ 27. Under this prong, the defendant may obtain relief when a clear or obvious error occurred and the error is so serious that it affected the fairness of the proceeding and challenged the integrity of the judicial process. *Moon*, 2022 IL 125959, ¶ 20. The appellate court determined that defendant could satisfy this standard because "a misapplication of the law that affects a defendant's fundamental right to liberty constitutes plain error." 2024 IL App (1st) 232479, ¶ 27.

¶ 82    The appellate court's reasoning cannot be squared with this court's case law on prong two plain error. As this court has clearly explained, it is the rare error that will qualify as prong two plain error. *People v. Jackson*, 2022 IL 127256, ¶ 27. The plain error rule itself is a narrow and limited exception to the forfeiture doctrine, and very few errors qualify as prong two plain errors. *Id.* Thus, a defendant attempting to establish prong two plain error is asking the court to "excuse his forfeiture under a narrow and limited rule and under a prong of the limited rule that rarely applies." *Id.*

¶ 83    *Jackson* further delineated the types of errors that qualify as prong two plain errors:

> "The second prong of the plain error rule can be invoked 'only in those exceptional circumstances where, despite the absence of objection, application of the rule is necessary to preserve the integrity and reputation of the judicial process.' *People v. Herrett*, 137 Ill. 2d 195, 214 (1990). This court has equated the second prong of the plain error rule with 'structural error.' *Thompson*, 238 Ill. 2d at 613-14 (citing *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009)). It is a type of error that 'erode[s] the integrity of the judicial process and undermine[s] the fairness of the defendant's trial.' *Herron*, 215 Ill. 2d at 186. Unlike an error reviewable under the first prong of the plain error rule, if a

defendant succeeds in establishing that structural error occurred, he need not show that he was prejudiced by the error. *Id*. at 187. Instead, regardless of the strength of the evidence of the defendant's guilt, prejudice to the defendant is presumed because of the importance of the right involved. *Id*.

The United States Supreme Court has explained that '[t]he purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial.' *Weaver v. Massachusetts*, 582 U.S. 286, 294-95 (2017). The structural errors identified by the Supreme Court include a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction. *Recuenco*, 548 U.S. at 218 n.2. The commonality of these errors is that they affect the framework within which the trial proceeds, rather than mere errors in the trial process itself. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).

In determining whether an error is structural for purposes of applying the second prong of Illinois's plain error rule, we often look to the types of errors that the United States Supreme Court has found to be structural error and determine whether the error being considered is similar. *Moon*, 2022 IL 125959, ¶ 30. However, we have not limited the second prong of Illinois's plain error rule to only those types of errors identified as structural by the Supreme Court. *Id*. Instead, we may find an error to be structural as a matter of state law independent from the categories of errors identified by the Supreme Court. *Id*." *Id.* ¶¶ 28-30.

¶ 84    The appellate court's determination that any error that affects a defendant's fundamental right to liberty is prong two plain error is not correct. If this were true, every sentencing error would be cognizable as prong two plain error. But this court just held in *People v. Johnson*, 2024 IL 130191, that a trial court's consideration of an improper factor at sentencing is not cognizable as prong two plain error. We further explained that "establishing that a forfeited error affected a substantial right does not grant automatic plain error review but merely satisfies the prerequisite that the error must affect a substantial right before plain error review is even considered." *Id.* ¶ 67. Accordingly, we specifically overruled a case—*People v.*

*Haley*, 2011 IL App (1st) 093585—that had held that consideration of an improper sentencing factor is cognizable as prong two plain error on the basis that it affects a defendant's fundamental right to liberty. *Johnson*, 2024 IL 130191, ¶ 69. The very test for prong two plain error that we rejected in *Johnson* was the one applied by the appellate court below. Once the appellate court determined that the error affected a substantial right, it should have gone on to consider whether the error was structural.

¶ 85    I cannot conclude that the trial court's consideration of an untimely petition to detain under the Pretrial Fairness Act is a structural error requiring automatic reversal as prong two plain error. The error is statutory rather than constitutional. The Pretrial Fairness Act generally contemplates the detention decision being made once. The State may only file a second petition if it alleges facts that were unknown to it when it filed the original petition. See 725 ILCS 5/110-6.1(d)(2) (West 2022). And the trial court may only revoke release under the circumstances set forth in section 110-6. See *id.* § 110-6. The plain language of the Pretrial Fairness Act does not allow a petition to detain when a defendant seeks a hearing under section 110-5(e). However, the legislature would have been perfectly within its right to allow petitions to detain at this stage of the proceedings without running afoul of the United States Constitution. Indeed, if the trial court's consideration of a new petition to detain in this circumstance were a constitutional violation, then the majority's "practical approach" (*supra* ¶ 42) of allowing the State to file these petitions would be in violation of the constitution.

¶ 86    Moreover, defendant has not alleged that the detention hearing was constitutionally deficient in any way. As the *Presley* court explained, the United States Supreme Court has determined that, under the fourth amendment (U.S. Const., amend. IV), a probable cause hearing prior to pretrial detention is sufficient protection of a defendant's fundamental right to liberty. See *Presley*, 2023 IL App (5th) 230970, ¶ 39 (citing *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). And, under the Illinois Constitution, pretrial detention is allowed for certain offenses " 'where the proof is evident or the presumption great *** [and] when the court, after a hearing, determines that release of the offender would pose a real and present threat to the physical safety of any person.' " *Id.* ¶ 41 (quoting Ill. Const. 1970, art. I, § 9). Thus, defendant was detained after a hearing that complied with the United States and Illinois Constitutions, although the hearing occurred at a time not contemplated

by the Pretrial Fairness Act. For these reasons I am compelled to conclude that, although a clear and obvious error occurred when the trial court considered the State's petition to detain, it was not a structural error cognizable as prong two plain error. Accordingly, I concur in the court's judgment reversing the appellate court.

¶ 87 Although I concur in the court's judgment, I close by once again stating my strong disagreement with the majority's analysis. With the adoption of the Pretrial Fairness Act, the legislature radically altered the Code provisions related to the ability of courts to detain defendants pretrial. As part of these provisions, the legislature enacted unmistakably clear directions for what remedy should be afforded defendants who were ordered released under the previous law but remained in detention because of circumstances beyond their control. Regrettably, most appellate court decisions have failed to enforce this clear statutory language and have instead granted the State the right to relitigate the eligibility of these defendants for pretrial release. Believing that the State has such a right requires one to believe that the legislature intended the State to have this right but did not grant that right in the applicable subsection. Rather, the legislature hid the right elsewhere in such an obscure manner that appellate court panels would split on whether the right even existed, and those that believed the State had such a right would not be able to agree on where it could be found. I do not believe that the legislature intended any such thing. I believe it intended exactly what it said in section 110-7.5(b) and 110-7.5(e).

¶ 88 The legislature's vision for how the Pretrial Fairness Act should work will never be fully realized if courts are unwilling to enforce it as written. This court should be leading the way in making this clear, not obstructing the legislature's intent by granting the State rights not found in the statute.

¶ 89 JUSTICE O'BRIEN joins in this special concurrence.