NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241411-U

NO. 4-24-1411

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 6, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| DAE'VON JACKSON, | ) | No. 23CF231 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ryan M. Cadagin, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Harris and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1  *Held*: The trial court did not err in determining that no set of conditions would mitigate the threat posed by defendant, and all other claims of error were waived.

¶ 2  Defendant Dae'von Jackson appeals the trial court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the effective date of the amendment as September 18, 2023).

¶ 3  Defendant argues that the State failed to show that no condition or combination of conditions could be imposed to mitigate the threat he posed, the State's petition to detain was untimely, and the trial court failed to hold a hearing within 48 hours of the petition to detain. For the reasons that follow, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5            In March 2023, the State charged defendant in a four-count information, subsequently superseded by a four-count indictment, with armed violence (720 ILCS 5/33A-2(a) (West 2022)), aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), aggravated domestic battery (*id.* § 12-3.3(a)), and endangering the life and health of a child (*id.* § 12C-5(a)(1)). The State alleged that defendant caused great bodily harm to a family or household member, Lafaye Vaden, by shooting her in the chest in the presence of a minor. The trial court found that the State had established probable cause and set bond in the amount of $500,000. Defendant did not post bond and remained in pretrial custody.

¶ 6            On September 19, 2023, defendant filed a motion pursuant to section 110-7.5(e) of the Code (725 ILCS 5/110-7.5(e) (West 2022)), alleging he was in custody based on his inability to post bond and seeking a hearing to reconsider pretrial release and conditions pursuant to the newly amended provisions of the Code. The State responded on October 4 with a verified petition seeking the detention of defendant pretrial where he posed a threat to any person or the community. The petition provided the following factual basis:

              "On March 18, 2023, the Springfield Police Department responded to a residence in the 1500 block of [E]ast Reynolds Street. Lafaye Vaden was located with a gunshot wound to the chest. A firearm was located in the bedroom where the shooting took place and the Defendant admitted to shooting Vaden.

              Vaden's injury was survivable and she cooperated with the investigation. Vaden told investigators that she was arguing with the Defendant, her boyfriend, about [childcare] for the evening. The Defendant retrieved a loaded firearm, pulled a young child away from Vaden, and shot Vaden in the chest at short range. Vaden

also suffered a significant injury to her hand when she tried to grab the gun as it was discharged.

A bullet was recovered from Vaden and a spent casing was located in the bedroom. Both the bullet and casing matched the recovered firearm. The Defendant's fingerprint was found on the recovered firearm's magazine.

Detectives determined the firearm in question had previously been purchased by the Defendant. There is a history [of] domestic violence between the Defendant and Vaden."

¶ 7 The matter proceeded to a hearing, where defendant confirmed he wanted the trial court to consider pretrial release under the newly amended provisions of the Code in lieu of his monetary bond. In support of its petition, the State's proffer conformed to the factual basis alleged in the petition. In addition, the State proffered that Vaden had powder burns on her breast, indicating the firearm was discharged at close range. She also suffered significant injuries to her hand because she tried to grab the gun when it fired. Regarding the argument precipitating the gunshot, Vaden stated defendant was upset that she wanted him to stay home and watch the children. Defendant retrieved his gun from a closet and "wrapped" it in order to fire. Vaden was on a bed, with a two-year-old child "basically on her lap." Defendant initially pointed the gun at Vaden's groin before he dragged the child away and pointed the gun at Vaden's chest or abdomen, and he fired when she tried to grab the gun. Although testing to confirm defendant's fingerprint on the cartridge case had not been completed, detectives had linked a bill of sale for the gun to defendant. Detectives "were later able to disprove" defendant's claim that the incident was an accident. Vaden also estimated that over 50 instances of domestic violence between her and defendant had occurred. The State was aware of a police report from February 2022 alleging

violence, but it also acknowledged that many of the alleged incidents went unreported.

¶ 8 The State argued that "given the [callous] and wanton acts" resulting from an "argument over basically nothing," defendant posed a threat and no court-imposed conditions would "be taken seriously" by defendant.

¶ 9 Defense counsel argued that defendant had no criminal history and purchased the gun with a valid firearm owners identification card. Defendant was not charged with attempted murder, and he conceded the gun fired when Vaden tried to grab it. Counsel conceded that defendant had displayed "poor judgment," but the shooting was an accident. The police report from the domestic incident referenced by the State did not result in charges. There was no basis for the State's argument, counsel contended, that defendant would not abide by conditions or follow court orders and conditions such as electronic monitoring, home confinement, and a no-contact order would mitigate any threat.

¶ 10 The trial court found that the State had met its burden in establishing that defendant was dangerous and that no set of conditions could mitigate the threat he posed. The court reasoned that "the nature and circumstances of the offenses charged and statements made by or attributed to [defendant] with the circumstances surrounding them" supported that conclusion. The written order stated that, based on the specific articulable facts of the case, no set of conditions could mitigate the real and present threat defendant posed. The court specifically reasoned that the nature and circumstances of the offense, combined with the statements of defendant, weighed against pretrial release.

¶ 11 Defendant then filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), arguing that the trial court erred in (1) finding that no conditions or combination thereof could mitigate the threat that he posed, (2) failing to consider all possible

conditions of release, and (3) failing to articulate the reasoning it found conditions of pretrial release inadequate. The matter proceeded to a hearing, where defendant informed the court that he had completed a pretrial risk assessment and scored as a low risk. Further, defendant's criminal history only consisted of a misdemeanor from 2019, an incident that amounted to a credibility contest between the victim and defendant. Defendant believed there were conditions that would mitigate any threat he posed and that he would abide by those conditions.

¶ 12        The trial court denied the motion for relief, finding that defendant's actions were "so far out of bounds of the expectations of a civil society to remove a child from a mother's arms and then shoot the mother," as to meet the dangerousness standard. The court further noted that this offense happened in the home, defendant had access to firearms, and electronic monitoring was incapable of discerning what defendant was doing and preventing this situation from happening again. The court held there were no conditions that could mitigate the threat defendant posed.

¶ 13        This appeal followed.

¶ 14                              II. ANALYSIS

¶ 15        On appeal, the Office of the State Appellate Defender (OSAD) filed a memorandum of law, arguing (1) that the trial court erred in determining that there were no conditions of pretrial release that would mitigate the potential threat that defendant posed, (2) that the State's verified petition for pretrial detention was untimely, and (3) the court failed to hold a hearing within 48 hours of the State's petition. OSAD recognizes that the last two arguments were not preserved below and argues that this court should consider the issues under the doctrine of plain error or as ineffective assistance of counsel.

¶ 16                              A. Waiver

¶ 17    In *People v. Nettles*, 2024 IL App (4th) 240962, ¶ 20, this court noted that it would not allow the appellate memorandum filed by OSAD to frame the issues on appeal when those issues were absent from the underlying motion for relief. Accord *People v. Drew*, 2024 IL App (5th) 240697, ¶ 44; Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Similar to this appeal, OSAD argued that even if the issue had not been properly preserved in the motion for relief, the court, nonetheless, should review the issue under the doctrine of plain error or as ineffective assistance of counsel. *Nettles*, 2024 IL App (4th) 240962, ¶ 22. We rejected the argument that plain error was applicable, given the directive in Rule 604(h) that any issue not raised in the motion for relief was not merely forfeited, but waived. *Id.* ¶ 32. Given that the argument was waived, plain error did not apply. *Id.* ¶ 33.

¶ 18    We noted that similar language in Rule 604(d) had previously been interpreted to find procedurally defaulted arguments had only been forfeited, despite the explicit directive to deem the argument "waived." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). After our decision in *Nettles*, the Illinois Supreme Court issued its decision in *People v. Ratliff*, 2024 IL 129356, ¶ 26, finding that "Rule 604(d) is unmistakably clear: Any issue not raised in a posttrial motion is 'waived' on appeal. Though forfeiture may be a limitation on the parties, and not this court, we have never stated that the same is true of waiver, and with good reason." The *Ratliff* court reaffirmed that Illinois Supreme Court Rules are not mere suggestions (*Id.* ¶ 27) and abandoned prior precedent finding that the word waived really meant forfeited. *Id.* ¶ 23 n.2. The court refused to overlook the defendant's waiver under the auspice of plain error to reach the merits of his claim. *Id.* ¶ 28.

¶ 19    We believe that *Ratliff*'s analysis of the waiver provisions of Rule 604(d) only serves to strengthen the conclusion in *Nettles* regarding similar waiver language in Rule 604(h)(2).

Accord *People v. Watkins-Romaine*, 2025 IL 130618, ¶ 27 n.3 (noting that the amended waiver provisions in Rule 604(h) present a "stricter preservation requirement" than the former version of the rule). Thus, we find here that issues not raised in the motion for relief are waived and thereby unreviewable under the doctrine of plain error. *Nettles*, 2024 IL App (4th) 240962, ¶ 33; *cf. People v. Scott*, 2015 IL App (4th) 130222, ¶ 21; *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019).

¶ 20          Also in *Nettles*, we declined to engage in review of the waived errors by placing them in the context of ineffective assistance of counsel, finding that any such argument would fail on the prejudice prong of the two-part test under *Strickland v. Washington*, 466 U.S. 668 (1984), because

> "[a]n appeal from a detention decision can be brought at any time prior to conviction. [Citation.] Subject to the limitation that no more than one appeal be brought at one time [citation], [the] defendant could *still* file a proper motion for relief and take a proper appeal. It is difficult to discern how a defendant could establish that he has been prejudiced by his attorney 'dropping the ball' when the ball is still in the air." (Emphasis in original.) *Nettles*, 2024 IL App (4th) 240962, ¶ 25.

Accord *Drew*, 2024 IL App (5th) 240697, ¶ 37. The type of alleged deficient pretrial action by counsel in this matter is not of the sort that would support an ineffective assistance of counsel claim in an appeal under Rule 604(h).

¶ 21          In sum, we adhere to our ruling in *Nettles* and decline to engage with the issues defendant has waived by failing to advance them in a motion for relief. Even if we were to rule on

the merits, the recent decision in *Watkins-Romaine*, 2025 IL 130618, ¶ 49, resolves defendant's claim that the State's petition to deny pretrial release was untimely.

¶ 22                              B. Conditions

¶ 23        We turn next to the argument that defendant has preserved for appeal: whether the trial court erred in finding that no condition or set of conditions could mitigate the threat that he posed. Specifically, he argues that the court only considered certain conditions in isolation while ignoring the possibility of their cumulative effect and the weight of the evidence established defendant would comply with conditions.

¶ 24        The Code presumes all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). When ordering pretrial detention, the circuit court is required to summarize its "reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(h)(1). The court must consider the specific facts of the case, including the defendant's background and characteristics, in determining whether any conditions or combination of conditions can mitigate the threat posed and allow for release. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18. A relevant consideration in determining if conditions are viable "is whether there is reason to believe the defendant is likely to violate the conditions the court might impose." *Id.* Simply because a person is charged with a detainable offense or has been determined to pose a threat to public safety is insufficient, standing alone, to order detention. *Id.*

¶ 25        "[W]hen parties to a pretrial detention hearing proceed solely by proffer, the reviewing court stands in the same position as the [trial] court and" our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51.

¶ 26 The proffers in this case establish that an argument about social plans for an evening and corresponding childcare escalated into defendant discharging a firearm into the victim's chest after consciously preparing to fire by "wrapp[ing]" it. The discharge occurred at such close range that, in addition to the gunshot wound that almost killed the victim, she also suffered powder burns to her chest. This incident took place in the presence of a two-year-old child, who was previously sitting on the victim's lap when defendant initially pointed the gun at the victim, until he forcibly removed the child before firing the weapon.

¶ 27 We agree with the trial court's observation that ,"given the [callous] and wanton acts" resulting from an "argument over basically nothing," defendant posed a threat and no court-imposed conditions would "be taken seriously." We do not believe that the danger presented would be adequately confined by the suggested conditions of release. This offense occurred in the home, defendant had access to firearms, and electronic monitoring is incapable of discerning what defendant is doing and preventing the situation from reoccurring. The risk posed here is grave, which gives reason to accept release on conditions only if they adequately guard against that risk.

¶ 28 We also note that, while it is inappropriate to detain a defendant based on the bare allegations of the charge, the circumstances surrounding an offense are a legitimate consideration. As we have previously found:

> "[T]he evidence of a defendant's charged conduct, even if it took place on a single occasion, may reflect such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders— or even societal norms regarding the safety of others—if the defendant is placed on pretrial release. The presumption in favor of pretrial release under the [Code] does not obligate a trial court to release such a defendant in the hopes that his otherwise

spotless record will negate the real and present threat he poses to the safety of the community as shown by the State's evidence." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 20.

¶ 29 While defendant only had a single misdemeanor conviction on his criminal record and the pretrial assessment presented at the motion for relief hearing found that he was a low risk, we note that this incident appears to be the apex of a series of as many as 50 incidents of domestic violence. Moreover, we agree with the trial court that the circumstances surrounding the offense were "so far out of bounds of the expectations of a civil society to remove a child from a mother's arms and then shoot the mother" that there is little confidence that defendant would comply with conditions of pretrial release. Moreover, as stated in *People v. Thomas*, 2024 IL App (4th) 240248, ¶ 26, electronic monitoring is not a panacea to address every defendant's potential dangerousness. "Knowing that electronic monitoring might detect a failure to comply with conditions of release does not diminish concerns that a particular defendant appears to present a greater risk of noncompliance." (Emphasis omitted.) *Id.*

¶ 30 Accordingly, the trial court did not err in finding that there were no set of conditions that could mitigate the threat defendant posed.

¶ 31                                    III. CONCLUSION

¶ 32 For the reasons stated, we affirm the judgment of the trial court.

¶ 33 Affirmed.