NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241541-U

NO. 4-24-1541

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 13, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| TREVON L. WALTON, | ) | No. 22CF1185 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ryan M. Cadagin, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not err in denying defendant pretrial release.

¶ 2    Defendant, Trevon L. Walton, appeals the circuit court's order denying him pretrial release under section 110-6.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a) (West 2022)), hereinafter as amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We affirm.

¶ 3                    I. BACKGROUND

¶ 4    In December 2022, defendant was arrested and the State charged him with two counts of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2022)), two counts of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), and two counts of possession of a weapon without a valid firearms owner's identification card (FOID card) (430 ILCS 65/2(a)(1)

(West 2022)). Bond was set at $100,000, with a 10% cash deposit. Defendant did not post bond and remained in custody.

¶ 5        Nearly two years later, on October 10, 2024, defendant filed a motion seeking a hearing to determine pretrial release conditions under section 110-7.5(b) of the Code (725 ILCS 5/110-7.5(b) (West 2022)). Defendant maintained he remained in custody due to his inability to post bond and, under the Code, he was entitled to a hearing to determine appropriate pretrial conditions for his release.

¶ 6        On October 15, 2024, the State responded to defendant's motion by filing a verified petition to deny defendant pretrial release under section 110-6.1(a)(1) of the Code (*id.* § 110-6.1(a)(1)), seeking to detain defendant pretrial under the dangerousness standard. In its petition, the State emphasized when defendant committed the charged offenses, he was on release on a cash bond in Sangamon County case No. 22-CF-771, in which he was charged with manufacturing or delivery of methamphetamine. Conditions of his release included no new offenses and no possession of firearms. Regarding the charged offenses in this case, the State proffered a police report, showing police officers responded to defendant's residence "in reference [to] a ShotSpotter alert of 2 rounds." When officers arrived at the residence and spoke to defendant, he stated he was playing video games and did not hear gunshots. However, spent cartridge cases were found "just outside his rear door." As a result of a warranted search of defendant's residence, officers found a "black-FN FNS-9C 9mm" firearm that matched the cartridge cases found outside. The cartridge cases matched ammunition found inside that firearm. A "silver-Ruger Security Six 357 magnum revolver" was also found. Defendant did not have a FOID card. Moreover, the petition notes DNA analysis confirmed defendant's DNA was found on both guns. It also lists defendant's criminal history, which includes 2014 possession of

cannabis and theft convictions ("CD unsatisfied"), a 2012 aggravated assault conviction, a 2009 "Man/Delivery" conviction, a 2005 home invasion conviction, a 2005 possession of a firearm ("Probation unsatisfied") conviction, and a 2000 aggravated battery conviction, for which defendant was a juvenile and adjudicated delinquent.

¶ 7 The pretrial investigation report provides further evidence on the issue of whether defendant should be released or detained. According to that report, defendant worked for C & M Concrete from April 2022 until his December 2022 arrest. He had three children, who did not reside with him. Defendant was in treatment for alcohol use and had completed domestic-violence treatment. Defendant scored a 5 on the Virginia Pretrial Risk Assessment Instrument-Revised, meaning he was "at a moderate risk."

¶ 8 The detention hearing was held on October 23, 2024. At the hearing, the State proffered largely the same alleged facts that appear in its verified petition and exhibit.

¶ 9 In support of his motion for pretrial release, defendant called two witnesses: Eric Rent and Jeremy Banks. He also made a statement on his own behalf.

¶ 10 Rent testified he and defendant were friends and he had known defendant for at least 10 or 12 years. The two spoke daily and saw each other two to three times per week. Before defendant did concrete work, he worked full-time at a pork processing plant in Beardstown, Illinois. Defendant had two daughters, around ages eight and six. Defendant was actively involved with his daughters. Rent opined defendant was "a good guy" who had not "been in trouble in 12 years *** as far as [he knew]"

¶ 11 According to Banks, he had known defendant "[t]en plus years." Before defendant's arrest, Banks saw defendant at least once a week. They talked and played games "all the time." Banks owned a barber shop and salon with eight employees. Banks stated, if defendant

were released, he would hire defendant to work full-time as a custodian at his shop. Banks described defendant as a family man who spent most of his time with his children. On cross-examination, Banks acknowledged he had pending felony charges involving the sale of firearms at the barbershop were pending. Those charges began a year before, and his barbershop was still operating.

¶ 12     Defendant began his statement by asserting he had "never harmed anyone to where there's been any form of disfigurement or anything of that nature." Defendant did not intend to sell drugs if released. He was not in a gang. Defendant performed community work at the warming center, at a homeless shelter, and with the group "SOUP," which stands for self-accountability, ownership, unity, and positivity. Defendant stated he "had sponsors with Chick-fil-A and Lincoln Land college" to sponsor SOUP. Because of his involvement with SOUP, defendant had been invited to some city council meetings and met with Jim Langfelder, who spoke highly of defendant and what defendant was doing for Springfield. Defendant's incarceration "cut down" the program. Defendant acknowledged he had made some poor decisions and was embarrassed by them. He was eager to return to the community and "give back in a helpful and meaningful way." Defendant further highlighted his successful completion of domestic-violence courses in Sangamon County. He attended Alcoholics Anonymous and had a letter from it. He was a trustee. Defendant asserted the correctional officers loved him and everyone he encountered enjoyed his company.

¶ 13     Defense counsel began his argument by explaining the charge in case No. 22-CF-771 should not be a charge of manufacturing or delivering methamphetamine. Counsel informed the circuit court that although defendant was charged with possessing over 5 grams of methamphetamine, the lab report shows only 2.5 grams. Counsel argued this would suggest the

evidence in that case would support a charge for Class 3 simple possession and not the Class 1 possession with intent to deliver with which defendant was charged. Counsel further emphasized the two qualifying felonies for defendant's being-an-armed-habitual-criminal charge occurred in 2005 and 2009.

¶ 14 At the close of the hearing, the circuit court granted the State's petition to deny defendant pretrial release. The court found, given defendant's DNA on the weapons, the State proved by clear and convincing evidence a detainable offense had been committed. The court highlighted the nature and circumstances of the offenses included shots being fired. The court stressed defendant's three prior violent convictions and the fact defendant is known to possess weapons. The court further found no conditions or set of conditions could mitigate the threat, based largely on the fact defendant was out on bond for a Class 1 felony at the time of the charged offenses.

¶ 15 The circuit court entered a written order finding the dangerousness standard was proved by clear and convincing evidence. This finding included a determination the proof was evident or the presumption great defendant committed a detainable offense. The court listed factors underlying its determination no condition or combination of conditions could mitigate the real and present threat, including the presence of weapons with defendant's DNA, the fact shots were fired, the presence of a juvenile in the home, and defendant's criminal history that included violent acts.

¶ 16 Defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). In his motion for relief, defendant argued the State failed to show he poses a real and present threat to the safety of the community and no condition or combination of conditions could mitigate the threat. Defendant further argued reasonable conditions, such as

- 5 -

GPS monitoring or curfew restrictions, could be imposed.

¶ 17    After the circuit court denied the motion for relief, this appeal followed.

¶ 18                    II. ANALYSIS

¶ 19    On appeal, defendant argues (1) the circuit court erred in finding his release poses a real and present threat to the community and no condition or combination of conditions can mitigate the threat and (2) the State's petition to deny him pretrial release was untimely. Defendant recognizes his last argument was not preserved in his Rule 604(h) motion for relief and urges this court to consider his argument under the doctrine of plain error or as ineffective assistance of counsel.

¶ 20                    A. Timeliness

¶ 21    Beginning with defendant's timeliness argument, we find the issue waived, and neither a claim of plain error nor a claim of ineffective assistance of counsel renders the waived argument reviewable. Both in *People v. Nettles*, 2024 IL App (4th) 240962, ¶¶ 24-26, 27-34, and *People v. Jackson*, 2025 IL App (4th) 241411-U, ¶¶ 17-21, this court considered and rejected similar attempts to gain review of waived claims not raised in motions for relief. In *Nettles*, we focused on the language of Rule 604(h)(2) deeming "waived" any and all arguments not raised in the motion for relief. *Nettles*, 2024 IL App (4th) 240962, ¶ 29. As we noted, "waiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *Id.* Believing the supreme court was not "careless in its selection of the word waiver" and knowing supreme court rules must be enforced as written, we reasoned the critical implication of the word "waived" is any waived issue under Rule 604(h)(2) was intentional and, therefore, need not be reviewed for plain error. *Id.* ¶¶ 30, 32-33. We then rejected defendant's request to apply the plain error doctrine to review his waived claim. *Id.* ¶ 34.

¶ 22      Also, in *Nettles*, we declined to consider the waived argument when couched as a claim for ineffective assistance of counsel. *Id.* ¶¶ 25-26. We determined, because the nature of a pretrial detention decision is not closed and must be revisited at each court date, the second prong for an ineffectiveness claim—prejudice—cannot be shown. *Id.* ¶ 25. As trial counsel remained free to address the waived issue before the court, the defendant could not prove he was prejudiced and could not rely on an ineffectiveness claim to address the claim not raised in his motion for relief. *Id.* ¶¶ 25-26.

¶ 23      Our decision in *Jackson* applied the rationale of *Nettles* to timeliness challenges not raised in a motion for relief, an argument like the timeliness challenge made here, and reached the same conclusion. *Jackson*, 2025 IL App (4th) 241411-U, ¶¶ 17-20. As the timeliness claims were waived, we declined to resolve them under the plain error doctrine or as a claim of ineffectiveness. *Id.* ¶ 21.

¶ 24      Following *Nettles* and finding *Jackson* persuasive, we will not review the timeliness issue defendant waived by not advancing it in his motion for relief. We note, however, the recent decision in *People v. Watkins-Romaine*, 2025 IL 130618, ¶ 49, resolves defendant's untimeliness challenge.

¶ 25                    B. Dangerousness Determination

¶ 26      Defendant asserts, on appeal, two challenges to the circuit court's decision denying his pretrial release under the dangerousness standard. Defendant asserts he was not a danger to the community. He also asserts the State failed to prove sufficiently no conditions of pretrial release would mitigate any threat. In support, defendant points to evidence establishing he posed no threat to the community, including testimony he volunteered in the community, was deeply involved with his family, had a strong character, and had full-time employment waiting

for him upon his release. Defendant further emphasizes the State's evidence he fired a gun was tenuous and his last conviction occurred in 2014.

¶ 27    Under the Code, we presume all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). Before that presumption may be overcome and a defendant may be detained, the State must prove a number of statutory elements by clear and convincing evidence. One element of the dangerousness standard is proof "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." See *id.* §§ 110-6.1(a), (e)(2). For this element, the Code presents a list of factors to consider. See *id.* § 110-6.1(g) (listing factors a circuit court may consider when considering dangerousness). These include the nature and circumstances of the offense charged (*id.* § 110-6.1(g)(1)), defendant's history and characteristics, including whether there is evidence of his prior criminal history indicative of violent, abusive, or assaultive behavior (*id.* § 110-6.1(g)(2)(A)), whether defendant is known to possess or have access to any weapon (*id.* § 110-6.1(g)(7)), and whether the defendant was on release from custody pending trial at the time of the current offense (*id.* § 110-6.1(g)(8)). In addition, before pretrial release may be denied under the dangerousness standard, section 110-6.1(e)(3)(i) of the Code requires the State prove by clear and convincing evidence "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(3)(i).

¶ 28    Decisions on whether to detain a defendant or grant that defendant pretrial release are reviewed under either the manifest-weight-of-the-evidence standard or *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. The Illinois Supreme Court recently set forth the circumstances

in which each standard applies:

> "(1) when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence and (2) when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id.*

¶ 29     As live testimony was presented at the hearing, we review the order detaining defendant under the manifest-weight-of-the-evidence standard. *Id.* Under this standard of review, we may reverse if we find the opposite conclusion clearly evident. See *Enbridge Pipeline (Illinois), LLC v. Temple*, 2017 IL App (4th) 150346, ¶ 89.

¶ 30     The circuit court's decision the State clearly and convincingly proved defendant poses a threat to the community is not against the manifest weight of the evidence. We acknowledge the testimony in defendant's favor, but the record contains sufficient evidence rendering the opposite conclusion not clearly evident. The nature and circumstances of the offense (see 725 ILCS 5/110-6.1(g)(1) (West 2022)) included evidence defendant not only possessed weapons, but also fired one of them. Two shots were indicated between defendant's residence and a vacant lot, and two cartridge cases were found just outside defendant's residence. Those cartridge cases matched a weapon found with defendant's DNA on it. We do not find this

evidence too tenuous to support a finding defendant poses a threat. Moreover, even though the offenses that were the bases for the being-an-armed-habitual-criminal charge are over 10 years old, the fact remains that defendant's criminal history contains violent and assaultive behavior (see *id.* § 110-6.1(g)(2)(A)). He also is known to possess weapons, despite being barred from doing so (see *id.* § 110-6.1(g)(7)) and, at the time of the current charged offenses, he was on pretrial release for at least one drug charge (see *id.* § 110-6.1(g)(8)).

¶ 31     The circuit court's decision the State clearly and convincingly proved no condition or combination of conditions can mitigate defendant's threat is also not against the manifest weight of the evidence. Defendant's conduct demonstrates a man unwilling to abide by any conditions the court would impose. His prior convictions resulted in his being prohibited from possessing a weapon, yet defendant is charged with possessing two. The conditions of his pretrial release on a charge of possessing methamphetamine also barred the possession of a weapon. Further, the charged offenses occurred in defendant's home, and the firing of the weapon occurred from the home or just outside of it. GPS monitoring or home confinement would not mitigate the threat defendant poses.

¶ 32     Defendant's case law is factually distinguishable. In *People v. Grayson*, 2024 IL App (4th) 241100-U, ¶¶ 2, 59, 68, we reversed an order detaining the defendant, as the danger that defendant posed originated in his role as a law enforcement officer, when he shot a woman while in her home as a result of a 911 call, but that danger no longer existed, as the defendant had been discharged from that role. Unlike the clear fact the *Grayson* defendant's role as a police officer was terminated, here, the proffer provides evidence contradicting defendant's claim he is no longer a threat. As shown above, that evidence supports the conclusion defendant's pretrial detention is not against the manifest weight of the evidence.

¶ 33                                III. CONCLUSION

¶ 34        We affirm the circuit court's judgment.

¶ 35        Affirmed.