2025 IL App (1st) 232479-B

No. 1-23-2479-B

Opinion filed March 26, 2025

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 10584 |
| | ) | |
| DAMARCO WATKINS-ROMAINE, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices D.B. Walker and R. Van Tine concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Damarco Watkins-Romaine was arrested and charged with five counts of attempted first degree murder, one count of aggravated battery with a firearm, and one count of aggravated discharge of a firearm, all stemming from an incident that took place on November 23, 2022. At a hearing on September 1, 2023, the State requested a "no bail" order, which the trial court denied. Instead, it ordered bail with electronic monitoring if defendant could satisfy a $350,000 "D-bond." Defendant remained in custody. Shortly after the trial court's ruling, on September 18, 2023, Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial

Fairness Act, which amended article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), went into effect. *Rowe v. Raoul*, 2023 IL 129248, ¶¶ 4 & n.1, 52.

¶ 2       Defendant petitioned for his release from custody, and the State filed a petition for pretrial detention. The trial court ordered defendant's detention, and he appealed, arguing that the State's petition for detention was untimely and that the State failed to meet its burden of proof to justify defendant's detention. On March 18, 2024, we reversed the trial court's judgment on the basis that the State's petition for detention was untimely filed and remanded for further proceedings consistent with sections 110-7.5(b) and 110-5(e) of the Code (725 ILCS 5/110-5(e), 110-7.5(b) (West 2022)). *People v. Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 53. Because we reversed on procedural grounds, we did not reach defendant's claim that the State failed to meet its burden of proof to justify defendant's pretrial detention. *Id.* ¶ 54.

¶ 3       On January 24, 2025, our supreme court reversed and remanded, holding that the State's petition for pretrial detention was timely filed. *People v. Watkins-Romaine*, 2025 IL 130618, ¶ 49. The supreme court instructed us, upon remand, to consider defendant's sufficiency argument. *Id.* ¶ 51. Accordingly, we do so now, and for the reasons that follow, we affirm the judgment of the trial court.

¶ 4                              I. BACKGROUND

¶ 5       At an initial bond hearing on September 1, 2023, the State requested a "no bail" order. Citing the highly circumstantial nature of the evidence, the trial court rejected the State's request, finding that the State had not demonstrated that the proof was evident or the presumption was great that defendant committed the charged offenses. However, the trial court imposed a bond of $350,000 and ordered defendant to surrender his Firearm Owner's Identification (FOID) card and

any firearms. The trial court also ordered electronic monitoring until further order of court. As far as the record indicates, defendant was never released.

¶ 6     On December 7, 2023, defendant filed a petition for release from detention, citing sections 110-5 and 110-7.5(b) of the Code. The State filed a petition for pretrial detention. At a hearing on December 13, 2023, both parties provided factual proffers.

¶ 7                                    A. The State's Proffer

¶ 8     According to the State, the victim left her boyfriend's house, located at 99th Street and Lowe Avenue in Chicago, Illinois, at 10:18 p.m. on November 23, 2022, after assisting with preparations for Thanksgiving dinner. She got into her car and noticed a white SUV parked next to her. As she drove, the white SUV followed her through multiple turns and, at one point, even cut through a gas station. The victim merged onto Interstate 57 (I-57), and the SUV continued to follow her. As she was driving in the rightmost lane, gunfire shattered one of her windows, and she saw a black male with short hair and facial hair firing at her from the SUV. She pulled over and called 911, and an officer found her alongside the road in a pool of blood inside the vehicle. The victim sustained two gunshot wounds to each leg, as well as one to the stomach. A number of 9-millimeter cartridge cases were located on the expressway.

¶ 9     The white SUV was ultimately identified as belonging to defendant's girlfriend, who told investigating officers that she had not driven the vehicle in some time because she lost the keys. She later told officers that she allowed her cousin to borrow the vehicle and he returned it around 10 p.m. on the night in question. A search of the SUV yielded ammunition consistent with the "make and model" of the spent casings recovered from I-57. The vehicle was also swabbed for DNA, some of which matched defendant's.

¶ 10     Defendant's phone was seized when he was taken into custody on an unrelated matter, and after executing a search warrant for defendant's phone, the State determined that defendant's phone was in the vicinity of the shooting at the relevant time. Messages on defendant's phone, as summarized by the State, referenced "Thanksgiving and taking revenge" and that defendant had a "prior beef, for lack of a better term, with the victim's boyfriend." The home the victim left just prior to the shooting was that of her boyfriend. Another message stated, "I have done got to a point where I'm saving bond money just to do what I want to do." Other messages, according to the State, "reference[d] having seven guns and that he'll f*** that block up every day." A Facebook post also referenced "shooting up" a house on 99th Street, which was the street where the victim's boyfriend lived.

¶ 11     Finally, defendant possessed a FOID card and had previously purchased multiple firearms, as well as ammunition that was the same caliber and brand as the casings recovered at the scene and the live rounds found in the SUV.

¶ 12     The State argued that defendant poses a real and present threat to the community and that no condition or combination of conditions could mitigate that threat and asked that the trial court detain defendant.

¶ 13                              B. Defendant's Proffer

¶ 14     According to defense counsel, the victim was unable to identify defendant and described the shooter as a light-skinned black male, while defendant is a dark-skinned black male. The victim also told police that she believed it was probably her ex-boyfriend, a different individual from defendant, who shot her.

¶ 15     The DNA profiles of four unidentified people, in addition to defendant's DNA, were found inside the SUV. The unidentified DNA was found on the steering wheel, the gear shift lever, and

some cigarette butts. Fingerprints found on the SUV's rearview mirror also did not match defendant's fingerprints.

¶ 16    Differing from the State's proffer, defense counsel asserted that defendant's girlfriend claimed her cousin borrowed the SUV and returned it "between 10:00 and 11:00 that evening." The cousin was killed in a homicide two days later.

¶ 17    None of the shell casings recovered could be verified to contain defendant's DNA, as none of the samples were suitable for testing, and defense counsel disputed the relevancy of the cell tower data, claiming that cell phones use the tower that provides the best signal and not necessarily the closest one. Defense counsel also pointed out that there was no proof defendant was the one who authored the text messages or Facebook post and that they made no reference to any particular person.

¶ 18    Finally, defense counsel stated that defendant was 29 years old, his family lived in the Cook County area, he owned his own catering business, and he served as the primary financial provider for his girlfriend and their two children. Defendant had no prior felony convictions, no history of violence, no instances of bond forfeitures, and he was not on parole or probation at the time he was arrested for the instant offense.

¶ 19                              C. The Trial Court's Ruling

¶ 20    The trial court granted the State's petition for detention, and it found that the State proved by clear and convincing evidence that the proof was evident or the presumption was great that defendant committed the charged offenses. Its oral pronouncement did not address whether the State met its burden as to the dangerousness element or whether any combination of conditions could mitigate the threat posed by defendant. Regarding these second and third elements, the trial court's written order recited the facts that defendant shot the victim five times, that defendant made

Facebook posts and sent text messages threatening to "shoot up" the victim's boyfriend's house, and that he was saving up bond money.

¶ 21    Defendant timely appealed the detention order (Ill. S. Ct. R. 604(h)(2) (eff. Oct. 19, 2023)), and both parties filed a memorandum. On appeal, defendant argues that the State failed to meet its burden of proof on every element.

¶ 22                                    II. ANALYSIS

¶ 23    Section 110-6.1(e) of the Code presumes that all defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). The presumption of release is overcome only if the State can prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person or the community based on the specific, articulable facts of the case; and (3) no condition or combination of conditions set forth in section 110-10 of the Code (*id.* § 110-10) can mitigate that threat. *Id.* § 110-6.1(e)(1)-(3). Clear and convincing evidence is " 'that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question.' " *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12 (quoting *In re John R.*, 339 Ill. App. 3d 778, 781 (2003)).

¶ 24    When the trial court makes a finding regarding detention based solely on proffers from the parties, we are not bound by that finding and may conduct our own independent *de novo* review of the proffered evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 25                              A. Detainable Offense

¶ 26    Defendant first argues that the State failed to prove that the proof is evident or the presumption great that defendant committed a detainable offense. We disagree.

- 6 -

¶ 27 As alleged by the State, attempted first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm are detainable offenses. 725 ILCS 5/110-6.1(a)(1.5), (6) (West 2022).

¶ 28 A significant amount of the proffered evidence against defendant is highly circumstantial. Defendant's DNA was found in the vehicle in question, but that is unsurprising given that it belonged to his girlfriend, and the vehicle also contained the DNA of four other unidentified individuals. Defendant's fingerprints were not found in the vehicle. Defendant's girlfriend stated that her cousin borrowed the vehicle around the time when the shooting took place, although she previously claimed she lost the keys and it had not been driven in some time. The victim herself could not identify defendant as the man who shot her and speculated that it may have been her ex-boyfriend, a different person. Live rounds were recovered from the vehicle that were the same as those used in the shooting, and defendant had purchased identical ammunition a few weeks prior to the shooting. Finally, defendant's cell phone pinged a cellular tower located in the vicinity of the shooting at the time of the offense.

¶ 29 However, the State's proffer regarding defendant's alleged text and Facebook messages ties these facts together. One of defendant's messages, sent three days prior to the shooting, referenced having "beef" with the victim's boyfriend as well as Thanksgiving and taking revenge. The shooting took place on November 23, 2022. Another message stated, "I have done got to a point where I'm saving bond money just to do what I want to do." And lastly, according to the State, a Facebook post made by defendant indicated he was "going to shoot up the house on 99th Street." The victim's boyfriend's house was located on 99th Street and Lowe Avenue in Chicago, Illinois.

¶ 30 In summary, circumstantial evidence ties defendant to this shooting that occurred around the same time he was stating his intention to "shoot up" a house on the same street as the victim's boyfriend's house—the house from which the victim departed immediately before she was followed and shot by someone driving a vehicle owned by defendant's girlfriend.

¶ 31 Altogether, the State presented clear and convincing evidence that the proof is evident or the presumption is great that defendant committed the charged, detainable offenses.

¶ 32 B. Real and Present Threat

¶ 33 Defendant next argues that the State failed to prove that defendant poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. *Id.* § 110-6.1(e)(2). The trial court did not err in finding this element proven by clear and convincing evidence.

¶ 34 Section 110-6.1(g) of the Code outlines some of the factors to be considered when determining a defendant's dangerousness. *Id.* § 110-6.1(g). One such factor is the nature and circumstances of the offense charged, including whether the offense was a crime of violence or involved a weapon. *Id.* § 110-6.1(g)(1). Here, defendant allegedly opened fire on the victim on an interstate highway and attempted to kill her, which was a violent offense that not only involved a weapon but threatened other nearby motorists.

¶ 35 We may also consider the identity of persons to whom defendant may pose a threat and the nature of the threat, as well as statements made by or attributed to the defendant. *Id.* § 110-6.1(g)(3)-(4). The victim was targeted on purpose, as defendant was allegedly waiting outside the victim's boyfriend's home and then followed her all the way to I-57. Moreover, defendant previously stated his intent to get revenge and "shoot up" the victim's boyfriend's house.

Defendant, based on his own messages, is also known to possess multiple firearms (*id.* § 110-6.1(g)(7)).

¶ 36 Given that the victim survived being shot five times and the victim's boyfriend is, as far as the record indicates, still alive, there is no reason to think defendant's vendetta simply vanished. Moreover, defendant's alleged violent conduct also recklessly put other innocent motorists at risk during his attempt on the victim's life.

¶ 37 The State demonstrated by clear and convincing evidence that defendant poses a threat to any person or the community based on the specific facts of this case.

¶ 38                    C. Whether Pretrial Conditions Can Mitigate the Threat

¶ 39 Defendant finally argues that the State failed to prove that no condition or combination of conditions can mitigate the real and present threat posed by defendant. *Id.* § 110-6.1(e)(3). Defendant has no felony convictions, and only multiple nonviolent misdemeanor convictions for theft, possession of cannabis, and criminal trespass to property, all of which are more than 10 years old. Defendant also has no history of bond forfeitures that might indicate his inability to comply with conditions of pretrial release. Nevertheless, the facts and circumstances of this case persuade us that the trial court's finding on this element was not error.

¶ 40 The State's proffer alleged that defendant sent multiple text and Facebook messages stating he had some sort of grievance with the victim's boyfriend, a desire to get revenge, his intention to save money for bond so he could do what he wanted, and his intention to "shoot up" the victim's boyfriend's house. He also sent a message, according to the State's summary, that he had seven guns and was going to "f*** that block up every day." Defendant knew where the victim's boyfriend lived and what kind of car the victim drove, and his alleged conduct involved lying in

wait outside the house and then following the victim before shooting her. Our review of the conditions of pretrial release in section 110-10 of the Code indicates that none of the available conditions would be sufficient to prevent defendant from following through on his stated intentions if he were released. See *id.* § 110-10.

¶ 41    The proffer of defendant's alleged statements shows the possibility of further violence if defendant were released and less restrictive means other than detention would not mitigate the threat defendant poses. Accordingly, the State met its burden of proof by clear and convincing evidence on this element and the trial court did not err in ordering defendant's pretrial detention.

¶ 42                                III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the trial court's decision to grant the State's petition for pretrial detention.

¶ 44    Affirmed.

***People v. Watkins-Romaine*, 2025 IL App (1st) 232479-B**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-CR-10584; the Hon. Mary Margaret Brosnahan, Judge, presiding. |
| **Attorneys for Appellant:** | James F. DiQuattro, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Sara McGann, Assistant State's Attorney, of counsel), for the People. |