NOTICE

Decision filed 04/29/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260063-U

NO. 5-26-0063

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 25-CF-1829 |
| | ) | |
| JOSHUA J. MORRISON, | ) | Honorable Emily J. Nielsen, |
| | ) | and Honorable Neil T. Schroeder, |
| Defendant-Appellee. | ) | Judges, presiding. |

JUSTICE CLARKE delivered the judgment of the court.
Justices McHaney and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's orders granting the defendant pretrial release with conditions and denying the State's motion for relief are affirmed where conditions sufficiently mitigated the defendant's risk.

¶ 2    The plaintiff, the State of Illinois, appeals the December 17, 2025, order from the Madison County circuit court that denied the State's petition to deny the defendant, Joshua Morrison, pretrial release and the January 22, 2026, denial of its motion for relief. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On July 21, 2025, the defendant was charged with aggravated arson, a Class X felony; arson, a Class 2 felony; and aggravated battery, a Class 3 felony. 720 ILCS 5/20-1.1(a), 20(a)(1), 12-3.05(a)(1) (West 2024). The defendant was later charged with a hate crime, a Class 4 felony.

1

*Id.* § 12-7.1. The State filed a verified petition to deny pretrial release on July 21, 2025. The petition alleged that the defendant committed a detainable offense, that he posed a real and present threat to any person or the community, and that he had a high likelihood of willful flight. 725 ILCS 5/110-6.1 (West 2024).

¶ 5    On July 23, 2025, the defendant's counsel expressed a *bona fide* doubt as to the defendant's fitness, and he was scheduled for an evaluation. The hearing on the State's petition to detain was continued due to the allegation of unfitness. On July 25, 2025, the trial court found the defendant was unfit to stand trial and ordered him to undergo treatment with the Illinois Department of Human Services (IDHS). The defendant then participated in inpatient mental health treatment for his schizophrenia. On December 10, 2025, IDHS filed a report, stating that the defendant had been restored to fitness.

¶ 6    On December 16, 2025, the State filed an amended verified petition, alleging the same information included within the original petition and additionally alleging that the defendant was charged with a hate crime, which was a detainable offense. The matter proceeded to a hearing on December 17, 2025. At the beginning of the hearing, the trial court found the defendant fit after the parties stipulated to the DHS report.

¶ 7    The matter then proceeded to a hearing on the State's petition to detain in front of Judge Nielsen. The State proffered the information about the offense, stating that the defendant was charged with aggravated arson, arson, aggravated battery involving great bodily harm, and a hate crime, which were all detainable offenses. On July 19, 2025, the Bethalto Police Department responded to an apartment building where the defendant was breaking windows of the building and setting his pickup truck on fire. When they arrived, the defendant was yelling and "flailing his arms" before fleeing back into the building. The defendant's truck was parked approximately five

2

feet from the front door of the apartment building, and officers were unable to enter the building. While waiting for the fire department, officers observed a victim through one of the windows asking for help, and they could hear the defendant yelling from within the building. Officers heard the defendant yell a homophobic slur. Officers also observed Winston Rulo exit the building with blood coming from his face and head, and he indicated that the defendant attacked him.

¶ 8    The State further proffered that officers attempted to make contact with the defendant after the fire was extinguished and indicated that he was under arrest, and asked him to surrender, which he did not do. Officers saw the defendant through a window of the apartment building, holding a knife. The Special Weapons and Tactics (SWAT) team attempted to get the defendant to come out of the building, but he refused, and the team entered with the use of gas canisters to take him into custody. The State proffered witness accounts from residents of the apartment building and statements from the victims as well, including information about Rulo's head injuries, which he sustained from the defendant. Rulo suffered a fractured skull, fractured orbital bone, and a brain bleed. Photos entered into evidence showed that the defendant's residence was in "a complete state of disarray" after his arrest. The defendant's truck fire caused damage to the exterior and structure of the apartment building and a neighboring vehicle.

¶ 9    The State proffered that on March 20, 2025, the defendant's father contacted the police in an effort to get help due to the defendant barricading himself in his apartment and having psychiatric issues. Officers attempted to get the defendant to come out of his apartment, but he refused. The defendant told his father that people were trying to kill him at that time, including the police. The State said that the defendant posed an ongoing danger to the public and that he was a flight risk. The State asked for the defendant to be detained.

3

¶ 10 Defense counsel proffered that the defendant suffered from a debilitating mental illness, and up until recently, it was controlled with medications and therapy. The defendant had no prior criminal history and scored a zero on the pretrial risk assessment. Defense counsel stated, "I believe [the defendant] was one of the sickest individuals that I've ever seen in my 20 plus years, and that was evidenced" by the fact that the defendant received inpatient treatment within weeks of his arrest, rather than waiting months. Defense counsel stated that the defendant was in "complete psychosis" when the incident occurred.

¶ 11 When the defendant was in the Madison County Jail, his condition "significantly decompensated" due to his mental illness being untreated. He had to receive physical treatment before he could receive mental health treatment. Once he was placed in the mental health hospital, the defendant rapidly improved due to voluntarily taking his medication and participating in treatment. Defense counsel stated that it was a "process" for the defendant to be in psychosis, and does not happen from missing one dose of his medication. The defendant did not have any recollection of the events, but felt guilt and remorse for the outcome of it. The defendant's family was also aware of his psychosis and wanted to help him.

¶ 12 Defense counsel submitted a letter from a social worker with IDHS that stated the social worker believed the defendant's mental illness could be managed on an outpatient basis. The defendant had strong family support, including family members who attended the hearing. The defendant's mother would allow him to reside with her, and she would supervise the defendant, his behavior, and medication usage. The defendant's medical provider could also submit proof to the court of the defendant's behavior, medication, and treatment as well. Defense counsel stated that the defendant did not pose a danger and that he could be released with conditions to mitigate any danger he posed. Defense counsel requested release on conditions.

4

¶ 13    The State responded, saying that the defendant was still dangerous. Additionally, the defendant's family previously attempted to intervene "without success," and the offense still occurred. The State argued that no conditions would ensure this would not happen again, and no obligation placed on the family would make sure the defendant continues to do "all the things that will have to happen." The State asked for the defendant to be detained.

¶ 14    The trial court said the following:

> "I don't like to put such a huge burden on a family.
>
> However, in this case, I am going to give him an opportunity with the support of his family to comply with some conditions of the Court. They are going to be extremely strict.
>
> Any deviation whatsoever will result in him being held in the Madison County Jail until his trial. And I think he has the ability today as we sit here today to follow my conditions, but I need everyone to understand that if that situation changes, someone has to tell us. Someone has to tell the public defenders office, someone has to tell pretrial services and they have to tell me immediately."

¶ 15    The trial court stated that the defendant's health care provider would report to the court weekly, confirming that he was taking his medication. The defendant was to reside with his mother and be on electronic home monitoring and stay away from the apartment building and all individuals living there. The defendant's mother confirmed she was in agreement with the conditions from the court.

¶ 16    The trial court entered a written order the same day, finding that the State failed to prove that no condition or combination of conditions could mitigate the real and present threat of the defendant. The order stated that the defendant would reside with his mother and grandparents,

would be on electronic monitoring, and was only to leave the home for doctor's appointments and court dates.

¶ 17     On December 19, 2025, the State filed a motion for relief. The State argued that the trial court erred in finding that the State failed to meet its burden to prove that no condition or combination of conditions could mitigate the real and present threat the defendant's release posed. Further, the conditions imposed were not adequate to mitigate the defendant's threat. The defendant's mental condition may be considered when assessing the adequacy of conditions of release to mitigate the threat. The State argued that the defendant's "declared mental condition strongly cautions against release, because he has clearly demonstrated that he may become uncontrollably violent."

¶ 18     The trial court held a hearing on the State's motion for relief on January 22, 2026, appearing before Judge Schroeder. The trial court stated at the beginning of the hearing that it had reviewed the transcript and the exhibits presented during the initial hearing. The State proceeded by proffer, including the information provided during the initial detention hearing and described above.

¶ 19     The State then argued that the nature and circumstances of this offense were "extremely dangerous" and that there were "no conditions that you can put in place to prevent similar future conduct." The mental condition of the defendant also favored detention, as the defendant could not regulate his behavior. The defendant posed a real and present threat to the safety of any person or persons or the community in that he could engage in similar conduct again and require a law enforcement response "to get him under control." The defendant also posed a risk of obstructing or attempting to obstruct the criminal justice process, which he showed through his "stand-off with the SWAT team."

¶ 20    The State argued that no conditions would be sufficient, and the conditions imposed by the trial court were inadequate. The defendant was placed on home confinement with electronic monitoring, but the nature of the offense showed that this attack was on his own neighbors and his own residence. The State said, "Keeping him in a specific home and monitoring him in that home doesn't really address the primary issue here. Which is, now we've just put a different set of people in danger by telling him he has to stay there." The State also asserted that the defendant's family, months prior to this incident, attempted to obtain help for him due to his mental state, but were unsuccessful. The State said, "[P]utting the burden on his family, as the trial Court did, to say, well now you watch him, and you tell us if this is becoming a problem, is both ineffective and has been proven unreliable. We've tried this and it didn't work."

¶ 21    The trial court said,

> "[At] the time his family tried to intervene there were no conditions of release in effect. The State [*sic*] had no real way of seeking relief from this Court, and it's often time difficult—to get mental health treatment for someone who is noncompliant with their medications and decompensating because their only avenue of redress is through a civil commitment proceeding. Which, most people don't even know to do or don't know that it's available to them.
>
> * * *
>
> And so, what I hear from the State today and what I see that the State argued at the detention hearing before, Judge Nielsen, is that, you wanted—you wished the Court to consider not his current mental state, but the mental state he was in at the time he committed the offenses.

7

And I have no doubt that had—at the detention hearing proceeded immediately upon his arrest, that the Court would have ordered him detained. And we would not be here having a [Rule] 604(h) Motion.

We would be here by [defense counsel] having a change of circumstances motion, arguing that a significant change in circumstances has occurred and that he is now on his medication. He is mentally stable, and that, conditions now, would exist that would allow him to be released into the community.

So my question is, [State], you wished the Court to consider not the Defendant's current state—his current physical and mental state. You want the Court to only consider his mental state at the time he committed the offenses and consider that to be the threat."

¶ 22    The State responded to the trial court's inquiry, stating that the conditions do not prevent the defendant from voluntarily or involuntarily stopping his medication. If the defendant stopped his medication, it would result in "him being outside of his own control and being a danger to everyone." The State argued that the defendant could not agree to conditions, as his mental health was "totally outside of his control." The trial court asked the State if it believed the defendant was a threat to the community when he was medication compliant, to which it responded, "[If the defendant] has the capacity to lose his own agency to nearly burn a building down and nearly beat a man to death, yes, the State does believe he is an ongoing danger to the community."

¶ 23    Defense counsel proceeded to argument, asserting that the State was standing mostly on the facts of the case, but the trial court found that conditions could mitigate the threat posed by the defendant. Defense counsel stated that the defendant had been compliant with conditions of his release for 30 days, and that his family supports him. The defendant's family's action in March 2025 showed that they were desperate but did not know how to intervene. They now had additional

8

resources through his weekly mental health care provider, the public defender, and the court. The family agreed to take on the burden of the conditions as well. Defense counsel argued that home confinement would be appropriate because it was different from when the defendant resided alone because he now resided with family who could provide him with their support and supervision. Defense counsel asked that the defendant's pretrial release with conditions be affirmed.

¶ 24 The trial court stated that Judge Nielsen considered the same information before the court and found that conditions were sufficient. The conditions imposed by Judge Nielsen included that the defendant stay on his medication and continue with psychiatric treatment to maintain his mental stability. The trial court stated that Judge Nielsen did not err in this decision, stating that the conditions were sufficient to protect the public and victims in the case. The court denied the State's motion. The trial court additionally modified the defendant's condition to explicitly state that he must take all prescribed medication as ordered by his doctors and comply with pretrial services with the previous conditions. The State appealed.

¶ 25                                  II. ANALYSIS

¶ 26 On appeal, the State argues that the form release order utilized by the trial court checked a box finding that the state failed to prove that no condition or conditions could mitigate the threat posed to any person or community. Based on the other boxes on the form being unchecked, the State contends that the trial court found the defendant had a high likelihood of flight, and that the conditions imposed did not mitigate the defendant's risk of willful flight. The State's argument as to the trial court's finding willful flight due to the absence of a checked box is waived, as it was not included in the motion for relief. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("Upon appeal, any issue not raised in the motion for relief *** shall be deemed waived."). We will review the defendant's remaining argument.

9

¶ 27    Next, the State argues that the trial court erred in granting the defendant pretrial release with conditions, because the conditions imposed were not sufficient to mitigate the defendant's risk of dangerousness. Specifically, the State contends that the nature and circumstances of the offenses charged, the weight of the evidence against the defendant, and the history and characteristics of the defendant favored denying the defendant pretrial release.

¶ 28    Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The circuit court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the circuit court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 29    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission

of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, where the circuit court is asked to consider the testimony of live witnesses and make factual findings, such as the State's burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, that the defendant has a high likelihood of willful flight to avoid prosecution, or that the defendant failed to comply with previously ordered conditions of pretrial release, our review is under the manifest weight of the evidence standard. *Id.* Because the parties proceeded solely by proffer, our review is *de novo*.

¶ 30    The court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. Those factors include (1) the nature and circumstances of the offenses charged, including whether they are crimes of violence or involve a weapon; (2) whether the defendant's prior criminal history indicates "violent, abusive, or assaultive behavior, or lack of such behavior"; (3) the identity of any individual to whose safety the defendant may pose a threat and the nature of any such threat; (4) the defendant's age and physical condition; (5) the age and physical condition of the victim or complaining witness; (6) whether the defendant possesses or has access to any weapons; (7) whether the defendant was on probation, parole, or mandatory supervised release when arrested on the underlying charges or any other offense; and (8) any other factor that has a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior. 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024). No one factor is determinative, and the court must base

11

its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 31 Once a court determines that the defendant poses a threat to the safety of any individual or the community, the trial court must determine whether the State has met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person;[1] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id*. No singular factor is dispositive. See *id*. The nature and circumstances of the underlying offense is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

¶ 32 With these factors in mind, we now consider, as the trial court did, the record presented. We will only consider the third element of pretrial detention, whether conditions were sufficient to mitigate the defendant's risk.

---

[1]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2024).

12

¶ 33    At the initial detention hearing, Judge Nielsen granted the defendant pretrial release under the conditions that he must live with his mother with electronic home monitoring and meet with his mental health care provider once a week. The defendant was only permitted to leave his mother's house for court dates and medical appointments. He was also not permitted to have contact with the victims or the apartment building. The defendant's mother confirmed her willingness to ensure that the defendant would live with her, and that he would comply with conditions. His mother stated that she would inform the court of any changes in the defendant's mental health.

¶ 34    During the motion for relief hearing, Judge Schroeder reviewed all evidence presented and the transcript of the initial detention hearing. After hearing arguments and conducting its own questioning of the parties, the trial court denied the motion for relief. The defendant had no prior criminal history and scored a zero on the pretrial risk assessment. Judge Schroeder stated that the conditions would keep the defendant mentally stable, which was "sufficient to protect the public."

¶ 35    The State bears the burden of proving each element of pretrial detention by clear and convincing evidence, which has been defined as "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.) *People v. Watkins-Romaine*, 2025 IL App (1st) 232479-B, ¶ 23. Based upon our independent review of the record, we find that the State failed to meet its burden of proof that no conditions were sufficient to mitigate the risk posed by the defendant's dangerousness. The trial court considered the defendant's risk and imposed proper conditions that mitigate the defendant's risk by ensuring that he is monitored, medication compliant, and receiving the treatment he needs to avoid psychiatric issues.

13

¶ 36    For the nature and circumstances of the offense charged, the facts were serious, resulting in head injuries to one of the victims, as well as property damage to the apartment building, the defendant's truck, and another vehicle. See 725 ILCS 5/110-5(a)(1) (West 2024) The defendant did not argue during either hearing that the offense was not serious, or denied that he committed the offenses. In fact, the defendant expressed regret to his public defender after being informed of his actions while experiencing the schizophrenic episode. The defendant in this case suffers from schizophrenia and bipolar disorder. The defendant's mental conditions are treated and regulated with medication and therapy. The defendant himself acknowledged that he suffers if he does not take his medication, resulting in the defendant presenting a danger to himself and others due to the decompensation of his mental state.

¶ 37    We may consider the defendant's mental condition on the basis of available information. *Id*. § 110-5(a)(3)(A). The record shows that the defendant's untreated mental illness does result in a risk of dangerous and violent behavior. However, the defendant did not have any previous criminal history despite his history of mental illness. The defendant's mental state drastically improves with medication and therapy, which is shown through the IDHS reports. The defendant was admitted into treatment on August 12, 2025, and restored to fitness on December 4, 2025, totaling 114 days. At the time of the detention hearing, the defendant was restored to fitness, medication compliant, and receiving mental health treatment.

¶ 38    At the time of the defendant's arrest, his mental condition posed a risk of danger to himself and others. The trial court stated, and we agree, that if "the detention hearing proceeded immediately upon his arrest, that the Court would have ordered him detained." The detention hearing, however, was continued until after the defendant was restored to fitness and received mental health medication and treatment. We must consider his mental state during the detention

14

hearing, after he was restored to fitness and received treatment, not his initial mental state immediately after his arrest. Additionally, at the time of the motion for relief hearing, the defendant had remained compliant with all conditions for at least 30 days. Considering all available information presented at the initial hearing and the motion for relief hearing, the defendant demonstrated that his voluntary participation in treatment drastically reduced his mental health issues and improved his mental condition.

¶ 39    We may also consider the defendant's family ties when determining conditions. *Id*. In addition to the defendant's voluntary compliance with medication and treatment, the defendant's family confirmed to the court their willingness to monitor the defendant and report any changes. The State argues that the defendant's family would not be able to ensure the defendant would remain medicated, and that there was "no evidence that [the] defendant could adhere to a court order requiring that he take his medication regularly." Four months prior to the charged offenses, the defendant's father called law enforcement to seek help for the defendant. The defendant barricaded himself into his apartment and was having psychiatric issues as a result of not taking his medication. The defendant refused help at that time.

¶ 40    This incident showed the family's willingness to seek help for the defendant and turned to law enforcement when the defendant experienced psychiatric issues. The family agreed to the conditions imposed by the court, including monitoring the defendant's medication compliance and behaviors while living with his mother on electronic home monitoring and transporting him to all mental health treatment appointments weekly. The defendant's mental health provider was also ordered to report to the court any changes in the defendant's compliance, behaviors, and participation in treatment.

15

¶ 41　The defendant's family now has additional resources for help if necessary, including pretrial services, the defendant's counsel, and the defendant's mental health provider. None of these resources were available to the defendant prior to his arrest and subsequent inpatient mental health treatment. The evidence presented included that in order for the defendant's mental state to decompensate to the level it did, he would have to remain unmedicated and untreated for a significant amount of time and missing one dose of medication would not result in a psychiatric issue. As such, the family's agreement to monitor the defendant, ensure medication compliance, and take him to all medical appointments mitigates the defendant's risk.

¶ 42　The State additionally argues that the defendant could not remain under electronic home confinement continuously, as monitoring permits the defendant to leave at least two days per week to participate in basic activities. 730 ILCS 5/5-8A-4(A-1) (West 2024). The statute provides which activities are considered "approved absences," including employment, school, religious services, work release, medical appointments, and purchasing groceries or other necessities. *Id.* § 5-8A-4(A). The court's order does permit the defendant to leave the residence for mental health treatment and court dates. This order allows the defendant to leave home as necessary, but the defendant would not need to leave home for any of the other provided reasons, as his family agreed to take charge of his care, and he was not permitted to drive.

¶ 43　The conditions imposed by the trial court mitigate the defendant's risk of dangerousness by ensuring he continues with his medication and treatment, and providing additional resources to the defendant's family if the defendant's behavior or medication intake changed. As such, it was not error for the trial court to deny the State's petition to detain the defendant and its motion for relief.

16

¶ 44                                          III. CONCLUSION

¶ 45     As the State failed to meet its burden of proof as to sufficient conditions to mitigate the

defendant's risk, the pretrial release order and denial of the State's motion for relief are affirmed.


¶ 46     Affirmed.